Justice Sotomayor
delivered the opinion of the Court.
Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification. In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted the Sex Offender Registration and Notification Act (SORNA or Act) as part of the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, Tit. I, 120 Stat. 590. Among its provisions, the Act established a federal criminal offense covering, inter alia, any person who *442 (1) “is required to register under [SORNA],” (2) “travels in interstate or foreign commerce,” and (3) “knowingly fails to register or update a registration.” 18 U. S. C. §2250(a). At issue in this case is whether § 2250 applies to sex offenders whose interstate travel occurred prior to SORNA’s effective date and, if so, whether the statute runs afoul of the Constitution’s prohibition on ex post facto laws. See Art. I, § 9, cl. 3. Liability under §2250, we hold, cannot be predicated on pre-SORNA travel. We therefore do not address the ex post facto question.
I
In May 2004, petitioner Thomas Carr pleaded guilty in Alabama state court to first-degree sexual abuse. He was sentenced to 15 years’ imprisonment, with all but 2 years suspended. Receiving credit for time previously served, Carr was released on probation on July 3,2004, and he registered as a sex offender as required by Alabama law.
In late 2004 or early 2005, prior to SORNA's enactment, Carr relocated from Alabama to Indiana. He did not comply with Indiana’s sex-offender registration requirements. In July 2007, Carr came to the attention of law enforcement in Fort Wayne, Indiana, following his involvement in a fight.
On August 22,2007, federal prosecutors filed an indictment in the United States District Court for the Northern District of Indiana charging Carr with failing to register in violation of § 2250. Carr moved to dismiss the indictment, asserting that because he traveled to Indiana prior to SORNA’s effective date, it would violate the Ex Post Facto Clause to prosecute him under §2250. The District Court denied Carr’s motion, and Carr entered a conditional guilty plea, preserving his right to appeal. He received a 30-month prison sentence.
The United States Court of Appeals for the Seventh Circuit consolidated Carr’s appeal with that of a similarly situated defendant, who, in addition to raising an ex post facto *443 claim, asserted that § 2250, by its terms, does not apply to persons whose interstate travel preceded SORNA’s enactment. Beginning with the statutory argument, the Court of Appeals held that §2250 “does not require that the defendant’s travel postdate the Act.” United States v. Dixon, 551 F. 3d 578, 582 (2008). The court relied principally on its understanding of SORNA’s underlying purpose:
“The evil at which [the Act] is aimed is that convicted sex offenders registered in one state might move to another state, fail to register there, and thus leave the public unprotected. The concern is as acute in a ease in which the offender moved before the Act was passed as in one in which he moved afterward.” Ibid, (citation omitted).
The court drew an analogy to 18 U. S. C. § 922(g), which prohibits convicted felons from “possess[ing] in or affecting commerce] any firearm or ammunition.” “The danger posed by such a felon is unaffected by when the gun crossed state lines . . . , and so it need not have crossed after the statute was passed.” 551 F. 3d, at 582 (citing Scarborough v. United States, 431 U. S. 563 (1977)). According to the court, § 2250(a), like § 922(g), uses movement in interstate commerce as a jurisdictional element “to establish a constitutional predicate for the statute . . . rather than to create a temporal requirement.” 551 F. 3d, at 583.
Reading §2250 to encompass pre-SORNA travel, the Seventh Circuit recognized, created a conflict with the Tenth Circuit’s decision in United States v. Husted, 545 F. 3d 1240 (2008). In holding that § 2250’s coverage “is limited to those individuals who travel in interstate commerce after the Act’s effective date,” the Tenth Circuit emphasized “Congress’s use of the present tense form of the verb ‘to travel’ . . . , which according to ordinary English grammar, does not refer to travel that has already occurred.” Id., at 1243-1244. *444 Rejecting this analysis, the Seventh Circuit characterized Congress’ choice of tenses as “'not very revealing.’” 551 F. 3d, at 583 (quoting Scarborough, 431 U. S., at 571).
Having dispensed with the statutory question, the Seventh Circuit considered the claim of Carr and his co-appellant that predicating a § 2250 prosecution on pre-SORNA travel violates the Ex Post Facto Clause. Reliance on a defendant’s pre-SORNA travel, the court concluded, poses no ex post facto problem so long as the defendant had “reasonable time” to register after SORNA took effect but failed to do so. 551 F. 3d, at 585. Noting that Carr remained unregistered five months after SORNA became applicable to him, the Seventh Circuit affirmed his conviction. Id., at 586-587. The court reversed the conviction of Carr’s co-appellant, finding that he had not been given a sufficient grace period to register.
In view of the division among the Circuits as to the meaning of § 2250’s “travel” requirement,[1] we granted certiorari, 557 U. S. 965 (2009), to decide the statute’s applicability to pre-SORNA travel and, if necessary, to consider the statute’s compliance with the Ex Post Facto Clause.[2]
*445 II
As relevant here, § 2250 provides: *446 For a defendant to violate this provision, Carr and the Government agree, the statute’s three elements must “be satisfied in sequence, culminating in a post-SORNA failure to register.” Brief for United States 13; see also Reply Brief for Petitioner 4,7, n. 6. A sequential reading, the parties recognize, helps to ensure a nexus between a defendant’s interstate travel and his failure to register as a sex offender. Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under § 2250 even if they had not left the State after being convicted — an illogical result given the absence of any obvious federal interest in punishing such state offenders.[3]
*445 “(a) In General — Whoever—
“(1) is required to register under the Sex Offender Registration and Notification Act;
“(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
“(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
“(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
“shall be fined under this title or imprisoned not more than 10 years, or both.”
*446 While both parties accept that the elements of §2250 should be read sequentially, they disagree on the event that sets the sequence in motion. In the Government’s view, the statute is triggered by a sex-offense conviction, which must be followed by interstate travel, and then a failure to register under SORNA. Only the last of these events, the Government maintains, must occur after SORNA took effect; the predicate conviction and the travel may both have predated the statute’s enactment. Carr, in contrast, asserts that the statutory sequence begins when a person becomes subject to SORNA’s registration requirements. The person must then travel in interstate commerce and thereafter fail to register. All of these events, Carr avers, necessarily postdate SORNA’s enactment because a sex offender could not have been required to register under SORNA until SORNA became the law.
Carr’s interpretation better accords with the statutory text. By its terms, the first element of § 2250(a) can only be satisfied when a person “is required to register under the Sex Offender Registration and Notification Act.” *447 § 2250(a)(1) (emphásis added). In an attempt to reconcile its preferred construction with the words of the statute, the Government insists that this language is merely “a shorthand way of identifying those persons who have a [sex-offense] conviction in the classes identified by SORNA.” Brief for United States 19-20. To reach this conclusion, the Government observes that another provision of SORNA, 42 U. S. C. § 16913(a), states that the Act’s registration requirements apply to “sex offender[s].” A “sex offender” is elsewhere defined as “an individual who was convicted of a sex offense.” § 16911(1). Thus, as the Government would have it, Congress used 12 words and two implied cross-references to establish that the first element of § 2250(a) is that a person has been convictéd of a sex offense. Such contortions can scarcely be called “shorthand.” It is far more sensible to conclude that Congress meant the first precondition to § 2250 liability to be the one it listed first: a “require[ment] to register under [SORNA].” Once a person becomes subject to SORNA’s registration requirements, which can occur only after the statute’s effective date, that person can be convicted under §2250 if he thereafter travels and then fails to register.[4]
That § 2250 sets forth the travel requirement in the present tense (“travels”) rather than in the past or present per- *448 feet (“traveled” or “has traveled”) reinforces the conclusion that preenactment travel falls outside the statute’s compass. Consistent with normal usage, we have frequently looked to Congress’ choice of verb tense to ascertain a statute’s temporal reach. See, e. g., United States v. Wilson, 503 U. S. 329, 333 (1992) (“Congress’ use of a verb tense is significant in construing statutes”); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U. S. 49, 57 (1987) (“Congress could have phrased its requirement in language that looked to the past . . . , but it did not choose this readily available option”); Barrett v. United States, 423 U. S. 212, 216 (1976) (observing that Congress used the present perfect tense to “denot[e] an act that has been completed”). The Dictionary Act also ascribes significance to verb tense. It provides that, “[i]n determining the meaning of any Act of Congress, unless the context indicates otherwisef,]... words used in the present tense include the future as well as the present.” 1 U. S. C. § 1. By implication, then, the Dictionary Act instructs that the present tense generally does not include the past. Accordingly, a statute that regulates a person who “travels” is not readily understood to encompass a person whose only travel occurred before the statute took effect. Indeed, neither the Government nor the dissent identifies any instance in which this Court has construed a present-tense verb in a criminal law to reach preenactment conduct.[5]
*449 In this instance, the statutory context strongly supports a forward-looking construction of “travels.” First, the word “travels” is followed in § 2250(a)(2)(B) by a series of other present-tense verbs — “enters or leaves, or resides in, Indian country.” (Emphasis added.) This Court has previously described a statute’s “undeviating use of the present tense” as a “striking indie[ator]” of its “prospective orientation.” Gwaltney, 484 U. S., at 59. The Seventh Circuit thought otherwise, reasoning that it would “mak[e] no sense” for “a sex offender who has resided in Indian country since long before the Act was passed [to be] subject to the Act but not someone who crossed state lines before the Act was passed.” 551 F. 3d, at 583. As a textual matter, however, it is the Seventh Circuit’s approach that makes little sense: If “travels” means “traveled” (i. e., a person “travels” if he crossed state lines before SORNA’s enactment), then the only way to avoid an incongruity among neighboring verbs would be to construe the phrase “resides i[n] Indian country” to encompass persons who once resided in Indian country but who left before SORNA’s enactment and have not since returned — an implausible reading that neither the Seventh Circuit, nor the Government, nor the dissent endorses.
Second, the other elements of a §2250 violation are similarly set forth in the present tense. Sections 2250(a)(1) and (a)(3) refer, respectively, to any person who “is required to register under [SORNA]” and who “knowingly fails to register or update a registration as required by [SORNA].” (Emphasis added.) The Government accepts that this last *450 element — a knowing failure to register or update a registration — must postdate SORNA’s enactment. Had Congress intended preenactment conduct to satisfy the first two requirements of § 2250 but not the third, it presumably would have varied the verb tenses to convey this meaning. Indeed, numerous federal statutes use the past-perfect tense to describe one or more elements of a criminal offense when coverage of preenactment events is intended. See, e. g., 18 U. S. C. §249(a)(2)(B)(iii) (2006 ed., Supp. Ill) (proscribing hate crimes in which “the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that has traveled in interstate or foreign commerce” (emphasis added)); § 922(g)(9) (2006 ed.) (proscribing firearm possession or transport by any person “who has been convicted” of a felony or a misdemeanor crime of domestic violence (emphasis added)); § 2252(a)(2) (2006 ed., Supp. II) (making it unlawful for any person to receive or distribute a visual depiction of a minor engaging in sexually explicit conduct that “has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce” (emphasis added)). The absence of similar phrasing here provides powerful evidence that § 2250 targets only posten-actment travel.[6]
*451 III
Echoing the Seventh Circuit’s assessment that Congress’ use of present-tense verbs in § 2250 is “not very revealing,” Brief for United States 17, the Government offers two principal arguments for construing the statute to cover pre-SORNA travel: First, such a reading avoids an “anomaly” in the statute’s coverage of federal versus state sex offenders; and second, it “better effectuates the statutory purpose,” id., at 22 (capitalization omitted). Neither argument persuades us to adopt the Government’s strained reading of the statutory text.
A
Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA’s registration requirements: any person who is a sex offender “by reason of a conviction under Federal law . . . , the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States,” § 2250(a)(2)(A), and any other person required to register under SORNA who “travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,” § 2250(a)(2)(B). According to the Government, these categories correspond to “two alternate sources of power to achieve Congress’s aim of broadly registering sex offenders.” Id., at 22. Placing pre-SORNA travelers within the statute's coverage, the Government maintains, “ensures that the jurisdictional reach of Section 2250(a)(2) has a comparable breadth as applied to both federal and state sex offenders.” Id., at 21.
The Government’s pronouncement that § 2250 should have an “equally broad sweep” with respect to federal and state *452 offenders, id., at 22, is little more than ipse dixit. Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under §2250, it easily could have adopted language to that effect. That it declined to do so indicates that Congress instead chose to handle federal and state sex offenders differently. There is nothing “anomalous]” about such a choice. To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA’s registration requirements by federal sex offenders — persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA’s enactment, they use the channels of interstate commerce in evading a State’s reach.
In this regard, it is notable that the federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement. Indeed, when it initially set national standards for state sex-offender registration programs in 1994, Congress did not include any federal criminal liability. Congress instead conditioned certain federal funds on States’ adoption of “criminal penalties” on any person “required to register under a State program ... who knowingly fails to so register and keep such registration current.” Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. 103-322, Tit. XVII, § 170101(c), 108 Stat. 2041, 42 U. S. C. § 14071(d). Two years later, Congress supplemented state enforcement mechanisms by subjecting to federal prosecution any covered sex offender who “changes address to a State other than the State in which the person resided at the time of the immediately preceding registration” and “knowingly fails to” register as required. Pam Lyehner Sexual Offender Tracking and *453 Identification Act of 1996, Pub. L. 104-236, §2,110 Stat. 3095, 3096, 42 U. S. C. §§ 14072(g)(3), (i).[7] The prospective orientation of this provision is apparent. No statutory gap necessitated coverage of unregistered offenders who “change[d] address” before the statute’s enactment; the prosecution of such persons remained the province of the States.
In enacting SORNA, Congress preserved this basic allocation of enforcement responsibilities. To strengthen state enforcement of registration requirements, Congress established, as a funding condition, that “[e]ach jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.” § 16913(e).[8] Meanwhile, Congress in § 2250 exposed to federal criminal liability, with penalties of up to 10 years’ imprisonment, persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce.
Understanding the act of travel as an aspect of the harm Congress sought to punish serves to distinguish § 2250 from the felon-in-possession statute to which the Seventh Circuit analogized. See 551 F. 3d, at 582-583. In Scarborough, this Court held that a prior version of the statute, which imposed criminal liability on any convicted felon who “ ‘pos *454 sesses ... in commerce or affecting commerce . . . any firearm/” 481 U.S., at 564 (quoting 18 U. S. C. App. § 1202(a) (1970 ed.)), did not require the Government to prove posten-actment movement of the firearm across state lines. According to the Court, Congress had given “no indication of any concern with either the movement of the gun or the possessor or with the time of acquisition.” 431 U. S., at 572. Its aim was simply “to keep guns out of the hands of” convicted felons, ibid., and, by using the phrase “in commerce or affecting commerce,” it invoked the full breadth of its Commerce Clause authority to achieve that end. No one in Scarborough disputed, however, that the act of possession had to occur postenactment; a felon who “possess[ed]” a firearm only preenactment was plainly outside the statute’s sweep. In this case, the proper analogy is not, as the Seventh Circuit suggested, between the travel of a sex offender and the movement of a firearm; it is between the sex offender who “travels” and the convicted felon who “possesses.” The act of travel by a convicted sex offender may serve as a jurisdictional predicate for §2250, but it is also, like the act of possession, the very conduct at which Congress took aim.
B
In a final effort to justify its position, the Government invokes one of SORNA’s underlying purposes: to locate sex offenders who had failed to abide by their registration obligations. SORNA, the Government observes, was motivated at least in part by Congress’ concern about these “missing” sex offenders — a problem the House Committee on the Judiciary expressly linked to interstate travel: “The most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation[,] are ‘missing/ meaning they have not complied with sex offender registration requirements. This typically occurs when the sex offender moves from one State to another.” H. R. Rep. No. 109-218, pt. 1, p. 26 (2005). The *455 goal of tracking down missing sex offenders, the Government maintains, “is surely better served by making Section 2250 applicable to them in their new States of residence immediately than by waiting for them to travel in interstate commerce and fail to register yet again.” Brief for United States 23-24. The Court of Appeals expressed a similar view. See 551 F. 3d, at 582.[9]
The Government’s argument confuses a general goal of SORNA with the specific purpose of §2250. Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in a broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks. See 42 U. S. C. § 16901 (“Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders”). Among its many provisions, SORNA instructs States to maintain sex-offender registries that compile an *456 array of information about sex offenders, §16914; to make this information publicly available online, §16918; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry, §§16919-16921; and to “provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter,” § 16913(e). Sex offenders, in turn, are required to “register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student,” § 16913(a), and to appear in person periodically to “allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered,” § 16916. By facilitating the collection of sex-offender information and its dissemination among jurisdictions, these provisions, not §2250, stand at the center of Congress’ effort to account for missing sex offenders.
Knowing that Congress aimed to reduce the number of noncompliant sex offenders thus tells us little about the specific policy choice Congress made in enacting §2250. While subjecting pre-SORNA travelers to punishment under § 2250 may well be consistent with the aim of finding missing sex offenders, a contrary construction in no way frustrates that broad goal. Taking account of SORNA’s overall structure, we have little reason to doubt that Congress intended §2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA’s registration requirements by traveling in interstate commerce. Cf. Mertens v. Hewitt Associates, 508 U. S. 248, 261 (1993) (“[Vjague notions of a statute’s ‘basic purpose’ are . . . inadequate to overcome the words of its text regarding the specific issue under consideration”).
*457 C
None of the legislative materials the Government cites as evidence of SORNA’s purpose calls this reading into question. To the contrary, the Report of the House Judiciary Committee suggests not only that a prohibition on postenactment travel is consonant with Congress’ goals, but also that it is the rule Congress in fact chose to adopt. As the Government acknowledges, the bill under consideration by the Committee contained a version of §2250 that “would not have reached pre-enactment interstate travel.” Brief for United States 24, n. 9. This earlier version imposed federal criminal penalties on any person who “receives a notice from an official that such person is required to register under [SORNA] and ... thereafter travels in interstate or foreign commerce, or enters or leaves Indian country.” H. R. Rep. No. 109-218, pt. 1, at 9; see also id., at 26 (“[S]ex offenders will now face Federal prosecution ... if they cross a State line and fail to comply with the sex offender registration and notification requirements contained in the legislation”). Yet this did not stop the Committee from describing its legislation as a solution to the problem of missing sex offenders. See id., at 28-24, 26, 45-46. The Government identifies nothing in the legislative record to suggest that, in modifying this language during the course of the legislative process, Congress intended to alter the statute’s temporal sweep.[10] At the very least, the close correspondence between the Committee’s discussion of missing sex offenders and its recognition of the travel element’s prospective application would seem to confirm that reading § 2250 to reach only post-enactment travel does not contravene SORNA’s underlying *458 purposes, let alone result in an absurdity that would compel us to disregard the statutory text. Cf. Arlington Central School Dist. Bd. of Ed. v. Murphy, 548 U. S. 291, 296 (2006) (“We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the statutory language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms” (internal quotation marks and citation omitted)).
* * *
Having concluded that § 2250 does not extend to preenactment travel, we need not consider whether such a construction would present difficulties under the Constitution’s Ex Post Facto Clause. The judgment of the United States Court of Appeals for the Seventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 While the Seventh and Tenth Circuits have confronted the question directly, other Circuits have also touched on it. Aligning itself with the Seventh Circuit, the Eleventh Circuit has analogized 18 U. S. C. 12250(a) to the felon-in-possession statute, § 922(g), and applied it to a sex offender who traveled before SORNA became applicable to him. United States v. Dumont, 555 F. 3d 1288, 1291-1292 (2009) (per curiam). In contrast, the Eighth Circuit has stated in dictum that § 2250(a) “punishes convicted sex offenders who travel in interstate commerce after the enactment of SORNA” United States v. May, 535 F. 3d 912, 920 (2008) (emphasis added).

 There is a separate conflict among the Courts of Appeals as to when SORNA’s registration requirements became applicable to persons convicted of sex offenses prior to the statute’s enactment. Several Circuits, including the Seventh, have taken the position that the Act did not apply to such sex offenders until the Attorney General provided for their inclusion by issuing an interim regulation, 72 Fed. Reg. 8897, on February 28, 2007 (codified at 28 CFR § 72.3). See, e. g., United States v. Hatcher, 560 F. 3d 222, 226-229 (CA4 2009); United States v. Cain, 583 F. 3d 408, 414- *445 419 (CA6 2009); United States v. Dixon, 551 F. 3d 578, 582 (CA7 2008) (case below); United States v. Madera, 528 F. 3d 852, 857-859 (CA11 2008) (per curiam). Other Circuits have held that persons with pre-SORNA sex-offense convictions became subject to the Act’s registration requirements upon the statute’s enactment in July 2006. See, e. g., May, 535 F. 3d, at 915-919; United States v. Hinckley, 550 F. 3d 926, 929-935 (CA10 2008). Because Carr traveled from Alabama to Indiana before both the enactment of SORNA and the Attorney General’s regulation, we have no occasion to consider whether a pre-SORNA sex offender whose travel and failure to register occurred between July 2006 and February 2007 is subject to liability under §2250, and we express no view on that question. We similarly express no view as to whether § 72.3 was properly promulgated — a question that has also divided the Circuits. Compare Cain, 583 F. 3d, at 419-424 (holding that the Attorney General lacked good cause for issuing the interim regulation without adhering to the notice-and-comment and publication requirements of the Administrative Procedure Act (APA)), with United States v. Dean, 604 F. 3d 1275, 1278-1282 (CA11 2010) (finding no APA violation); United States v. Gould, 568 F. 3d 459, 469-470 (CA4 2009) (same).

 For persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability. See § 2250(a)(2)(A).

 Offering a variation on the Government’s argument, the dissent contends that, “[i]n accordance with current drafting conventions, § 2250(a) speaks, not as of the time when the law went into effect, but as of the time when the first act necessary for conviction is committed.” Post, at 464-465 (opinion of Auto, J.). This occurs, the dissent maintains, “when an individual is convicted of a qualifying sex offense, for it is that act that triggers the requirement to register under SORNA.” Post, at 465. The dissent’s account cannot be squared with the statutory text. “[T]he first act necessary for conviction” under § 2250(a) is not a predicate sex-offense conviction. It is a requirement “to register under [SORNA].” § 2250(a)(1). Thus, even if the dissent is correct that legislative drafters do not invariably use the moment of enactment to mark the dividing line between covered and uncovered acts, they have clearly done so here.

 The Court of Appeals quoted a Ninth Circuit decision for the proposition that “‘the present tense is commonly used to refer to past, present, and future all at the same time.’ ” 551 F. 3d, at 583 (quoting Coalition for Clean Air v. Southern Cal. Edison Co., 971 F. 2d 219, 225 (1992)). Neither court offered examples of such usage. Perhaps, as the Dictionary Act itself recognizes, there may be instances in which “context” supports this sort of omnitemporality, but it is not the typical understanding of the present tense in either normal discourse or statutory construction. Taken in context, the word “travels” as it appears in §2250 is indistinguishable from the present-tense verbs that appear in myriad other criminal statutes to proscribe conduct on a prospective basis. Examining a *449 criminal law with a travel element similar to the one at issue here, the Ninth Circuit itself recently agreed that “the present tense verb ‘travels,’ most sensibly read, does not refer to travel that occurred in the past— that is, before the enactment of the statute.” United States v. Jackson, 480 F. 3d 1014, 1019 (2007) (interpreting 18 U. S. C. § 2423(c), which imposes criminal penalties on “[a]ny United States citizen... who travels in foreign commerce, and engages in any illicit sexual conduct with another person”).

 The dissent identifies several “SORNA provisions that plainly use the present tense to refer to events that... may have occurred before SORNA took effect.” Post, at 467. All of these examples appear in 42 U. S. C. § 16911, a definitional section that merely elucidates the meaning of certain statutory terms and proscribes no conduct. All but two of the provisions, moreover, rely on the term “sex offender,” which §16911(1) defines to mean “an individual who was convicted of a sex offense.” (Emphasis added.) The remaining provisions are § 16911(7), which simply uses “involves” rather than “involved” to define whether a prior conviction qualifies as a “specified offense against a minor,” and § 16911(8), which makes plain that its present-tense reference to an offender’s age refers to age “at the time of the offense.” These examples thus provide scant support for the proposition that §2250 uses “travels” to refer to pre-SORNA travel. Given the well-established presumption against retroactivity and, in the criminal context, the constitutional bar on ex post facto laws, it cannot be *451 the ease that a statutory prohibition set forth in the present tense applies by default to acts completed before the statute's enactment. See Johnson v. United States, 529 U. S. 694, 701 (2000) (“Absent a clear statement of that intent, we do not give retroactive effect to statutes burdening private interests”).

Pre-S0RNA law also exposed to federal criminal liability any person whose State “ha[d] not established a minimally sufficient sexual offender registration program” and who was thus required to register with the Federal Bureau of Investigation (FBI). See 42 U. S. C. §§ 14072(c), (g)(2), (i). SORNA does not include a similar FBI registration requirement, presumably because, by the time of the statute’s enactment, “every State . .. had enacted some” type of registration system. Smith v. Doe, 538 U. S. 84, 90 (2003).

 The law in Indiana, Carr’s State of residence, makes the failure to register a class D felony, which carries a prison term of up to three years’ imprisonment. Ind. Code §§ ll-8-8-17(a), 35-50-2-7(a) (2009).

 Also making this point, the dissent maintains that “[(Interpreting § 2250(a)(2)(B) to reach only postenactment travel severely impairs §2250(a)’s effectiveness” by “placing] beyond the reach of the federal criminal laws” “the many sex offenders who had managed to avoid preexisting registration regimes.” Post, at 471. The dissent sees “no apparent reason why Congress would have wanted to impose such a requirement.” Ibid. Yet the dissent approves an even greater impairment. Addressing a dispute we leave unresolved, see n. 2, supra, the dissent would hold that, in enacting SORNA, “Congress remained neutral on the question whether the Act reaches those with pre-SORNA sex-offense convictions.” Post, at 467. The dissent’s view, in other words, is that SORNA does not apply of its own force to any sex offenders convicted prior to the statute’s enactment — a reading wholly inconsistent with the dissent’s description of SORNA as “a response to a dangerous gap in the then-existing sex-offender-registration laws.” Post, at 470. If, as the dissent accepts, Congress left open the possibility that no preenaetment offenders would face liability under §2250, then it is certainly not unreasonable to conclude that Congress limited the statute’s coverage to offenders who travel after its enactment.. Indeed, it is strange to think that Congress might have enacted a statute that declined to cover pre-SORNA offenders but nevertheless covered pre-SORNA travel.

 Among other changes, Congress eliminated the language that conditioned liability on proof of notice, and it removed the word “thereafter,” presumably as redundant in light of the sequential structure of the enacted statute.