BOUDIN, Circuit Judge,
concurring.
Judge Selya’s decision for the panel lays out lucidly the reasons why the statutory language and canons of construction- — always the first resort in interpretation— support applying the statute to the defendant. It may be useful to underscore two further points: that the statute’s design leans against the narrow reading adopted by several other circuits and that Congress’ purpose supports the broader one that we adopt today.
National standards for sex offender registration have existed since 1994, when the Congress provided federal funding to states that enacted sex offender registration laws. See 42 U.S.C. § 14071. By the time that the Sex Offender Registration and Notification Act (SORNA), Pub.L. No. 109-248, tit. I, 120 Stat. 590 (42 U.S.C. § 16901 et seq.), was signed into law on July 27, 2006, every state — including Massachusetts and Rhode Island — had enacted a sex offender registration law. See National Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg. 38,-030, 38,030 (July 2, 2008); see also Smith v. Doe, 538 U.S. 84, 90, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).
But the pre-SORNA state-by-state schemes contained potential gaps and loopholes through which sex offenders could attempt to evade registration requirements or the consequences of registration violations. See H.R.Rep. No. 109-218, pt. 1, at 23. Senator Cantwell explained: “Child sex offenders have exploited this stunning lack of uniformity, and the consequences have been tragic. Twenty percent of the Nation’s 560,000 sex offenders are ‘lost’ because State offender registry programs are not coordinated well enough.” 152 Cong. Rec. S8020 (daily ed. July 20, 2006). SORNA’s aim, repeated throughout the debate in Congress, was to impose on this patchwork a uniform, “comprehensive” federal registration statute. See 42 U.S.C. § 16901; see also United States v. Hinckley, 550 F.3d 926, 947 (10th Cir.2008) (Gorsuch, J., concurring).
SORNA pressed states — on pain of losing federal funding — to adopt new federal standards in their own sex offender registration programs. 42 U.S.C. § 16925. In addition, it directly imposed new federal registration obligations on sex offenders and provided for federal enforcement of those obligations. 42 U.S.C. §§ 16913-16917. What is important to the case before us is that Congress intended the enforcement provisions to apply of their own force to those who had previously been convicted and not just to newly convicted offenders.
The House Judiciary Committee report on an earlier version of SORNA explained that SORNA would address the “strong public interest in finding” previously convicted offenders who were not currently registered “and having them register with current information to mitigate the risks of additional crimes against children.” H.R.Rep. No. 109-218, pt. 1, at 24. Similarly, Senator Kyi explained: “There currently are over 100,000 sex offenders in this country who are required to register but are ‘off the system.’ They are not registered. The penalties in this bill should be adequate to ensure that these individuals register.” 152 Cong. Rec. *29 S8025 (daily ed. July 20, 2006) (emphasis added); accord id. at S8013 (Sen. Hatch).
Consonantly, the SORNA provision on registry requirements for sex offenders has a single opening paragraph, titled “In general,” that directs all “sex offenders]” to register and to keep their registration current, 42 U.S.C. § 16913(a), and SORNA defines the term sex offender as “an individual who was convicted of a sex offense,” id. § 16911(1) (emphasis added). Subsection (a), without exempting offenders with convictions before SORNA came into force, provides in full:
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
Id. § 16913(a).
The provision, central to achieving SOR-NA’s objectives, is manifestly remedial in purpose — not punitive. This is borne out by the evident reason for requiring registration in the first place, which is to prevent further crimes, by the statements in Congress to the same effect, and by the placement of the registration provisions in 42 U.S.C. rather than the Criminal Code, 18 U.S.C. There is no presumption against or prohibition on making remedial measures apply to preexisting circumstances. See Smith, 538 U.S. 84, 123 S.Ct. 1140.
SORNA also adopted criminal enforcement provisions, one of which punishes someone who after SORNA was enacted travels in interstate commerce but fails to register in a new state of residence within a fixed period. 18 U.S.C. § 2250(a); 42 U.S.C. § 16913; see Carr v. United States, — U.S.-, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010). Here, DiTomasso — previously registered in Massachusetts as a sex offender — traveled in interstate commerce after July 27, 2006, and then failed to register in Rhode Island even though expressly advised of his obligation to register.
At this point, one might wonder why there is any problem at all with DiTomasso’s conviction. The problem arises because in SORNA, Congress adopted not only the blanket requirement of subsection (a), but also a more detailed provision dealing with initial registration (subsection (b)); and a provision titled “Initial registration of sex offenders unable to comply with subsection (b)” (subsection (d)). The latter, drafted in language somewhat opaque at first, reads:
(d) Initial registration of sex offenders unable to comply with subsection (b) The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).
42 U.S.C. § 16913(d).
Since both the heading and the main internal cross reference in the text — “offenders who are unable to comply with subsection (b)” — relate to subsection (b), one could read subsection (d) as confined to certain problems, mainly dealing with timing, that Congress foresaw as to initial registration.[9] But there is also some evi *30 dence that might support subsection (d) as allowing the Attorney General to qualify the blanket applicability of subsection (a) itself if special problems arose in applying the statute to pre-SORNA convicts.
Yet if subsection (d) were read to apply to matters other than initial registration, it still does not say that SORNA exempts those convicted before SORNA unless and until the Attorney General so determines. It is perfectly fair to read subsections (a) and (d) together so that — absent contrary action by the Attorney General — SORNA applies to one convicted before SORNA but who “travels” afterwards and refuses to register. That is the way the Attorney General himself reads the statute.[10] See Applicability of SORNA, 72 Fed.Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3).
A contrary reading would suppose that Congress left those with pre-SORNA convictions free from registration requirements unless and until the Attorney General got around to regulating; in principle, such a reading would allow him not to regulate them at all. This is hardly consistent with Congress’ emphatic purpose to advance the “strong public interest in finding” and imposing registration requirements on those already convicted before SORNA itself.
Some very capable judges appear initially to have viewed the matter differently, but, with respect, there is nothing in text or history that forbids reading subsection (a) as fully applicable unless and until the Attorney General limits or qualifies it so far as subsection (d) might permit; and, even if the language could read either way, this is the reading most consistent with Congress’ central purpose.

. Importantly, state initial registration requirements, varying from one state to another, could in various circumstances have made it infeasible for those convicted prior to SOR- *30 NA to have registered in the manner and within the time limits now prescribed by SORNA's subsection (b) requirements. See Interim Rule on the Applicability of SORNA, 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3).

. In certain circumstances, the reading of an official charged with administering an ambiguous statute is entitled to substantial deference so long as it is linguistically permissible, see Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); in other circumstances, it has persuasive force, see Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). In Carr, the Supreme Court rejected the Attorney General's reading of a separate SORNA provision, but there, the statutory term in issue — "travels”' — did arguably directly conflict with the Attorney General's reading. Here, "authority to specify” says nothing express about whether the subsection (a) operates with full force if the Attorney General declines to exercise his authority.