REYNA, Circuit Judge,
dissenting.
I do not believe that the United States Court of Appeals for Veterans Claims (“Veterans Court”) misinterpreted § 101(e) of the Veterans Benefits Act of 2003 (“Act”) by restoring dependency and indemnity compensation (“DIC”) benefits to surviving spouses of veterans who remarry after age 57 and whose application was submitted before December 16, 2004. The Veterans Court, specialists in this area of law, properly held that Mrs. Frederick met all of the statutory criteria and awarded her DIC benefits as the remarried widow of a World War II veteran. The majority decision strips that award from Mrs. Frederick and thousands of others. I respectfully dissent because the plain meaning of the statute requires an interpretation favoring Mrs. Frederick; even if ambiguity can be shown, canons of *1274 construction unique to veterans law require that we resolve any remaining doubt in her favor.
The relevant facts are uncontested and underscore the merit of Mrs. Frederick’s claim under the Act. Mrs. Frederick was married in 1961 to Mr. Fred T. Hill, a World War II veteran who passed away with a 100% disability rating in 1970 and she was at that time a “surviving spouse” under the Act. See § 101(a). Mrs. Frederick submitted an application for DIC benefits to the Veterans Administration on June 4,1970, shortly after the death of her husband. She received DIC benefits from the time of her husband’s death in 1970 until 1986, when the benefits were terminated due to her marriage to Mr. Spencer Frederick.
There is no question that “but for having remarried [she] would [have remained] eligible for benefits” under the Act. See § 101(e). Mrs. Frederick was born on January 4, 1929, and married Mr. Frederick in December of 1986 so at the time of her remarriage, she “had attained age 57” as required by the Act. See id. Given her 1970 application for DIC benefits, her DIC claim was received by the Secretary of Veterans Affairs “not later than the end of the one-year period beginning on the date of the enactment of th[e] Act,” to wit, before December 16, 2004. See id. Accordingly, Mrs. Frederick meets every eligibility requirement on the face of the Act, §§ 101(a)[1] and (e),[2] and should have been receiving DIC benefits.
As the Veterans Court determined, the plain meaning of the statute provides only an end date — “not later than the end of the one-year period beginning on the date of enactment of this Act” — by which an application for DIC benefits must have been submitted. Frederick v. Shinseki, 24 Vet.App. 335, 338 (2011); § 101(e). I agree that the Act’s clear language creates a final deadline, as opposed to a bounded period, for submission of a DIC benefits application. Mrs. Frederick’s initial 1970 application for DIC benefits precedes the Act’s critical date by more than three decades. It was more than timely filed.
The majority holds that a second application for DIC benefits should have been filed by Mrs. Frederick during a narrow one-year window, between December 16, 2003 and December 16, 2004; that is, Congress created a bounded period of one year during which applications under the Act should have been filed. Yet, the Act neither prescribes filing “during,” “within,” or “between” two dates, nor requires “a reapplication,” “a new application,” or “another application.” In clear and plain language, the Act provides only that “an application” must be submitted “not later than” December 16, 2004. The Veterans Court was correct that this clear language should control.
The majority works hard to establish that because the word “submits” is drafted in the present tense, it indicates a fully prospective requirement, i.e., the filing of a *1275 new application for DIC benefits. See Maj. Op. at 1270. (“Submits ... necessarily is forward-looking from the date of enactment of the Act.”). But the Supreme Court has recognized that while not the typical understanding in other circumstances, a word drafted in the present tense may also be used to encompass past events in “instances in which ‘context’ supports this sort of omnitemporality.” Carr v. United States, 560 U.S. 438, 130 S.Ct. 2229, 2236 n. 5, 176 L.Ed.2d 1152 (2010). Indeed, English-language scholars know well that the present tense may refer to the past, a usage grammarians call the “historical present.” See R. Pence and D. Emery, A Grammar of Present-Day English, 262-63 (2d ed. 1963). The historical present uses the present tense commonly in narratives to express immediacy. Id. Furthermore, the present tense may be used when time is meant to remain indefinite.[3] Id. In this light, I believe that Congress used the present tense word “submits” precisely because it did not wish to limit § 101(e)’s reach to either past or future applications. See Coal. for Clean Air v. U.S. Envtl. Prot. Agency, 971 F.2d 219, 224-25 (9th Cir.1992) (“The present tense is commonly used to refer to past, present, and future all at the same time.”); In re Stratford of Tex., Inc., 635 F.2d 365, 369 (5th Cir.1981) (“[T]he present tense of a verb may sometimes refer to the past and to the future as well as to the present.”). Such “omnitemporality” makes sense in this context, signaling a congressional intent to recognize that eligibility may be retained by anyone who filed prior to the date of enactment, or within a year thereafter. When “submits an application” is added to the express deadline language “not later than,” the meaning is irrefutably clear — only one application for DIC benefits is required, filed any time before December 16, 2004.
We must assume when the words of a statute are irrefutably clear that Congress said what it meant and meant what it said, thereby ending our judicial inquiry. Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); United States v. LaBonte, 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). The legislative history, no matter how creatively spun, cannot trump the plain and unambiguous language of the statute. See Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (“There are, we recognize, contrary indications in the statute’s legislative history. But we do not resort to legislative history to cloud a statutory text that is clear.”); Van Wersch v. Dep’t of Health & Human Servs., 197 F.3d 1144, 1152 (Fed.Cir.1999) (“[W]e are not prepared to allow the extant legislative history ... to trump the irrefutably plain language that emerged when Congress actually took pen to paper.”).
The Veterans Court found, and I agree, that the legislative history here is, “at best, ambiguous.” Frederick, 24 Vet.App. at 342. The majority cites a single legislative history quotation that remarried spouses “would have one year to apply for the reinstatement of these benefits,” 149 *1276 Cong. Rec. S15,133-01 (daily ed. Nov. 19, 2003). Aside that this language also does not create a defined one year period for filing of applications, this limitation was not included in the Act as passed. Maj. Op. at 1266. This inchoate idea — a bounded window for reinstatement — was rejected by Congress, as evidenced that the Act was passed containing language that goes the other way. This case is a good example of why we should avoid reliance on “murky, ambiguous, and contradictory” legislative history, especially when it defies the statute’s plain meaning and defeats its remedial purpose. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); see also Ratzlaf, 510 U.S. at 147-48, 114 S.Ct. 655; Van Wersch, 197 F.3d at 1152.
Even if the statute did admit of ambiguity, we must be loathe to construe § 101(e) against Mrs. Frederick. The Act is a remedial statute intended to broaden eligibility for DIC benefits. The veterans benefits system operates in a uniquely pro-claimant manner so we must do justice, ensuring that veterans and their families are treated fairly. See Barrett v. Nicholson, 466 F.3d 1038, 1044 (Fed.Cir.2006); Hodge v. West, 155 F.3d 1356, 1362-64 (Fed.Cir.1998). Indeed, the Supreme Court has held that any interpretive doubt be resolved in the veteran’s favor. Brown v. Gardner, 513 U.S. 115, 117-18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); Coffy v. Republic Steel Corp., 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946); see also Sursely v. Peake, 551 F.3d 1351, 1355 (Fed.Cir.2009). The Veterans Court faithfully applied this important principle, and I would affirm.

. "(a) The remarriage after age 57 of the surviving spouse of a veteran shall not bar the furnishing of benefits specified in paragraph (5) to such person as the surviving spouse of the veteran.”

. "(e) APPLICATION FOR BENEFITS. — In the case of an individual who but for having remarried would be eligible for benefits under title 38, United States Code, by reason of the amendment made by subsection (a), and whose remarriage was before the date of enactment of this Act and after the individual had attained age 57, the individual shall be eligible for such benefits by reason of such amendment only if the individual submits an application for such benefits to the Secretary of Veterans affairs not later than the end of the one-year period beginning on the date of enactment of this Act.”

. The majority acknowledges that Congressional drafting manuals prefer the present tense. Maj. Op. at 1270. For example, Congress drafted 42 U.S.C. & 7413(c)(2) using the present tense: “any person who knowingly— (A) makes any false material statement, ... (B) fails to notify or report as required under this Act; ...” 42 U.S.C. & 7413(c)(2) (emphasis added). The Ninth Circuit observed that in this instance "Congress uses the present tense to establish criminal liability.... Yet clearly the 1990 Amendments do not forgive criminal violations that occurred prior to the Amendments just because Congress speaks in the present tense.” Coal. for Clean Air v. U.S. Envtl. Prot. Agency, 971 F.2d 219, 225 (9th Cir.1992).