*521 BOGGS, Circuit Judge,
dissenting.
Today’s majority adopts an interpretation of the immigration statute that it admits “make[s] little sense.” Majority Op. at 520. At issue is the phrase “an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence.” The majority construes this phrase to mean that the alien must have been lawfully admitted for permanent residence at the time he or she first physically entered the United States. Thus, in the majority’s view, one can acquire the status of “an alien lawfully admitted for permanent residence,” but whether one is “admitted to the United States” as such is a question of historical fact. The majority concedes that it can discern no material difference between an alien who enters this country as a lawful permanent resident (“LPR”) and one who adjusts his status following entry. Ibid. Nevertheless, under the majority’s interpretation of the statute, the latter is eligible for a § 212(h) waiver but the former is not.
The BIA offers an alternative interpretation of the text. Under that interpretation, one can be treated as having been “admitted as” an LPR without having actually been admitted (i.e., physically entered the country) as such. In other words, according to the BIA, when an alien adjusts his status, it is as if the alien were “admitted ... as ... an alien lawfully admitted for permanent residence.”
For the government to prevail, it need not show that its interpretation of the statute is correct; rather, it need only show that the text is ambiguous on this point, and that the BIA’s interpretation was reasonable. See Scialabba v. Cuellar de Osorio, — U.S. —, 134 S.Ct. 2191, 2203, 189 L.Ed.2d 98 (2014) (“[I]f the law does not speak clearly to the question at issue, a court must defer to the Board’s reasonable interpretation, rather than substitute its own reading.”). The text of a statute is ambiguous if “it is subject to more than one reasonable interpretation.” N. Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm’n, 691 F.3d 735, 740 (6th Cir.2012). For the reasons explained below, the BIA’s alternative interpretation of the text is at least as plausible as that of the majority. What’s more, the BIA’s interpretation avoids the nonsensical result of treating LPRs differently under § 212(h) based on how they acquired their LPR status, which the majority concedes ought to be immaterial. Because the BIA offers a reasonable interpretation of an ambiguous provision of the immigration laws, the court must defer to the BIA. I therefore respectfully dissent.
“When an interpretation of a statutory text leads to a result that makes no sense, a court should at a minimum go back and verify that the textual analysis is correct.” Carr v. United States, 560 U.S. 438, 470, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010) (Scalia, J., concurring). The majority’s textual analysis is flawed, or at least incomplete, because it ignores other uses of the phrase “admitted ... as an alien lawfully admitted for permanent residence” elsewhere in the Immigration and Nationality Act. That phrase is also employed at 8 U.S.C. §§ 1151, 1186a, and 1186b. An analysis of the use of the phrase in those sections makes clear that an alien need not physically enter the country as an LPR to qualify as “an alien ... admitted ... as an alien lawfully admitted for permanent residence.” See 8 U.S.C. § 1182(h) (emphasis added). As a result, the interpretation of § 212(h) proffered by the BIA actually has strong support in the statutory text.
The phrase is first used in § 1151(c), which deals with the “computation” of the number of family-sponsored immigrant vi *522 sas that are to be made available in a given year. Part of that computation involves a reduction for the number of aliens who, among other things, were paroled into the country “in the second preceding fiscal year” and “did not depart ... within 365 days.” § 1151(c)(4). Under the following paragraph, however, certain exceptions aside, if any such alien “is subsequently admitted as an alien lawfully admitted for permanent residence, such alien shall not again be considered for purposes of paragraph (1),” which delineates the computation methodology. § 1151(c)(5) (emphasis added). Section 1151(b)(5) thus contemplates that an alien already in the United States, who entered lawfully, may be “subsequently admitted as an alien lawfully admitted for permanent residence.” In other words, since the “admitted as” language refers to aliens who are already here, that language cannot mean “physical entry.” And since it also refers to aliens who first entered lawfully, it cannot mean “first lawful entry.” Cf Majority Op. at 519 (arguing that “adjustment of status is an ‘admission’” only for “those who had first entered the U.S. illegally and are only lawfully in the United States after completing an adjustment of status.”). Inserting the definition relied on by the majority, § 1151(c)(5) would effectively read, in pertinent part: an alien already in the United States may “subsequently [enter into the United States after inspection and authorization by an immigration officer].” See Majority Op. at 517 (inserting that same definition in the statute disputed herein, § 1182(h)). That construction does not make sense because it anticipates the future entry of an alien who is already in the country. Here, the government’s “adjustment-as-admission” argument, as the majority refers to it, see id. at 518-19, is actually more compelling.
Further supporting the BIA’s view is the fact that an alien’s adjustment of status is actually called an “admission” under the statute. Section 1255(b) provides: “Upon the approval of an application for adjustment made under subsection (a) of this section, the Attorney General shall record the alien’s lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made.” (emphasis added). Thus, an alien who later adjusts his status to that of “an alien lawfully admitted for permanent residence” also acquires a date of “admission,” as opposed to a date of “adjustment.” See id.; § 1182(h) (providing that no waiver shall be granted if the alien has been convicted of an aggravated felony “since the date of such admission.”). Following the language of the statute, it would therefore be quite logical to say that such an alien was “admitted as” an LPR on the date that his application was approved. In other words, from a legal perspective, by adjusting his status, the alien effectively became an alien “admitted ... as an alien lawfully admitted for permanent residence,” whether or not he physically entered the country in that capacity.
The phrase “admitted as an alien lawfully admitted for permanent residence” is also used in §§ 1186a and 1186b of the Act, which make “conditional” the LPR status of “alien spouses and sons and daughters,” among others. According to his brief, Stanovsek “was admitted to the United States as a non-immigration visitor and later adjusted status to permanent residence under Section 245 of the Act, 8 U.S.C. § 1255 [sic ] in August 1990 based upon his marriage to Susan Stanovsek, a United States citizen.” Appellant’s Br. at 4. He therefore appears to qualify as an “alien spouse” whose LPR status is “conditional ... subject to the provisions of [§ 1186a].”[1]
Section 1186a(e) provides:
*523 For purposes of subchapter III of this chapter, in the case of an alien who is in the United States as a lawful permanent resident on a conditional basis under this section, the alien shall be considered to have been admitted as an alien lawfully admitted for permanent residence and to be in the United States as an alien lawfully admitted to the United States for permanent residence.
In other words, an alien spouse like Stanovsek not only is an LPR, but is “considered to have been admitted as” one.[2] The language of § 1186b is identical. The point is that Congress accorded conditional LPRs the status of having been “admitted as aliens lawfully admitted for permanent residence” — regardless of whether the LPRs physically entered the country as LPRs or subsequently adjusted their status.
The language in §§ 1186a(e) and 1186b(e) mirrors the § 212(h) waiver language, which prohibits granting a waiver to an alien subsequently convicted of an aggravated felony where that alien “has previously been admitted to the United States as an alien lawfully admitted for permanent residence.” See § 1182(h). In other words, § 1182(h) bars waivers for certain aliens “who ha[ve] previously been admitted” as LPRs, and § 1186a(e) provides that alien spouses like Stanovsek “shall be considered to have been admitted” as LPRs.
The majority’s reading is thus not required by, and is in numerous places contraindicated by, the text of the statute. In addition, that reading leads to absurd results. The majority’s interpretation makes the congressional language impose harsher terms on aliens who enter completely legally (as aliens “lawfully admitted for permanent residence”) than on any other category of entrants, including not only those who enter, for example, as tourists and later adjust their status, but even those who sneak across the border; those who overstay their visas; or those who violate any other type of entry requirement — by lying about qualifications, past history, or affiliations, for example. On the majority’s interpretation, § 212(h) waivers are in principle available to all such aliens — but not to those who entered legally and with the imprimatur of being “lawfully admitted for permanent residence.” The BIA’s alternative interpretation would treat all LPRs alike for purposes of § 212(h), whether they entered as LPRs or adjusted their status. That reading is both textually and logically sound. As a result, the case for deference here is strong.
As the Supreme Court recently reiterated, “judicial deference to the Executive Branch is especially appropriate in the im *524 migration context.” Scialabba, 134 S.Ct. at 2203. “Under Chevron, the statute’s plain meaning controls, whatever the Board might have to say. But if the law does not speak clearly to the question at issue, a court must defer to the Board’s reasonable interpretation, rather than substitute its own reading.” Ibid, (citations omitted).
Here, the majority should recognize that its interpretation of the statute is not the only reasonable one. As a result, the court should have concluded that the statute was ambiguous. That is, it is unclear whether the phrase “an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence” is meant simply to reference all LPRs or, alternatively, to carve out for harsher treatment a subset of LPRs who first physically entered the United States in that capacity. This case thus embodies the kind of “ambiguous provision in a complex statutory scheme” in which deference is appropriate. Id. at 2213.
Here, as in Scialabba, “the Board chose a textually reasonable construction consonant with its view of the purposes and policies underlying immigration law.” Ibid. Given that the BIA’s construction is at least as viable as the majority’s, and especially given the majority’s own admission that its interpretation “make[s] little sense,” the court should have deferred to the Board. I therefore respectfully dissent.

. "The term 'alien spouse' means an alien who obtains the status of an alien lawfully admitted for permanent residence (whether on a conditional basis or otherwise) — (A) as an immediate relative (described in section 1151(b) of this title) as the spouse of a citizen of the United States.” § 1186a(h)(l). There is no indication that he and his spouse sought to have his conditional status removed pursuant to § 1186a(c).

. To be sure, these sections apply to subchapter III and concern "[tjreatment of [the] period for purposes of naturalization,” whereas the § 212(h) waiver is contained in subchapter II ("Immigration”). But the purpose of these sections is to clarify that, for purposes of naturalization, conditional LPRs should be treated no differently from nonconditional LPRs. In other words, the statutory language appears to assume that all non-conditional LPRs are "admitted as” such, and goes on to declare that conditional LPRs should likewise be treated as having been "admitted as" LPRs, notwithstanding their conditional status.