# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 12, 2011

Lyle W. Cayce
Clerk

No. 08-51185

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ANTHONY JAMES KEBODEAUX, also known as Anthony Kebodeaux,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:

The petition for rehearing en banc, treated as a petition for panel rehearing, is GRANTED. We withdraw our prior opinion, *United States v. Kebodeaux*, 634 F.3d 293 (5th Cir. 2011), and substitute the following.

Defendant, Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intrastate change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A), read together with

No. 08-51185

§ 16913, because that provision regulates purely intrastate activities, rather than any aspect of Congress's proper domain of interstate commerce—and that no other Article I source of authority permits Congress to impose SORNA's registration and notification obligations on him.    We conclude that § 2250(a)(2)(A) is constitutional.

## BACKGROUND

In 1999, Kebodeaux, a twenty-one-year-old member of the United States Air Force, was convicted under Article 120 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 920, of Carnal Knowledge With a Child, and sentenced to three months of confinement and a bad conduct discharge.    The victim was a fifteen-year-old with whom Kebodeaux had sexual relations to which the victim assented in fact though she lacked the legal ability to consent. Kebodeaux served his sentence and was discharged from the military.  No term of supervised release was imposed.

On August 8, 2007, Kebodeaux registered as a sex offender in El Paso, Texas, and reported his residence at a street address in that city, in compliance with SORNA.  *See* 42 U.S.C. § 16913.  On January 24, 2008, El Paso police were unable to locate Kebodeaux at that address.  On March 12, 2008, Kebodeaux was found and arrested in San Antonio, Texas. Kebodeaux admits that he did not update his registration or otherwise inform authorities of his relocation from El Paso to San Antonio as required by SORNA.[1]  On April 2, 2008, a federal grand

---

[1] 42 U.S.C. § 16913(a) provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.  For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence."  42 U.S.C. § 16913(c) also provides, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.  That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register."

No. 08-51185

jury indicted Kebodeaux on one count of violating of SORNA, 18 U.S.C. § 2250(a).

Section 2250(a) makes it a crime punishable by up to ten years imprisonment if a person who:

    (1)    is required to register under [SORNA];

    (2)    (A)    is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the [UCMJ]), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

        (B)    travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

    (3)    knowingly fails to register or update a registration as required by [SORNA].

Thus, "Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration [and updating] requirements: any person who is a sex offender 'by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, § 2250(a)(2)(A), and any other person required to register under SORNA who 'travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,' § 2250(a)(2)(B)." *Carr v. United States*, 130 S. Ct. 2229, 2238 (2010) (alteration removed). Accordingly, "[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability." *Id.* at 2235 n.3 (citing § 2250(a)(2)(A)).

In response to Kebodeaux's pre-trial filings, the Government stated that it was charging Kebodeaux solely because he fell under 18 U.S.C. § 2250(a)(2)(A), as he qualified as a sex offender "for the purpose of" SORNA "by reason of a

3

No. 08-51185

conviction under . . . the [UCMJ]" and knowingly failed to update his registration when he moved intra-state, within Texas.[2]  After a bench trial on the stipulated facts described above, Kebodeaux was convicted and subsequently sentenced below the Sentencing Guidelines recommendation to twelve months and one day of imprisonment, with a five-year term of supervised release.  Kebodeaux timely appeals the constitutionality of his conviction and sentence.

## DISCUSSION

We review challenges to the constitutionality of a conviction *de novo*. *United States v. Whaley*, 577 F.3d 254, 256 (5th Cir. 2009).

Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)'s punishment of a federal sex offender – who has previously registered under SORNA –  for knowingly failing to update his registration after an intrastate relocation in violation of the registration requirement imposed by § 16913.  He concedes the constitutional validity of the balance of SORNA's provisions.

We must begin any assessment of the constitutionality of a duly-enacted federal statute with a "presumption of constitutionality."  *United States v. Morrison*, 529 U.S. 598, 607 (2000).  This presumption itself is grounded in the Constitution: "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."  *Id.*  We remain, of course, mindful that in some cases a party will succeed in making this "plain showing," and that in those cases it is our obligation to declare the law unconstitutional.  *Cf. Morrison*, 529 U.S. at 616, 627 (holding part of the Violence Against Women Act outside Congress's authority to enact); *United*

---

[2]    The Government also stated that it was not charging Kebodeaux under § 2250(a)(2)(B), for having traveled in interstate or foreign commerce or having entered an Indian reservation and knowingly having failed to update his registration.

No. 08-51185

*States v. Lopez*, 514 U.S. 549, 567–68 (1995) (holding the Gun-Free School Zones Act unconstitutional).

Along these lines, we note that we do not write on a blank slate as to SORNA, as it has withstood constitutional scrutiny on a number of fronts in the years since its enactment. Our court has previously held that, as applied to sex offenders who traveled across state lines, § 16913, taken together with § 2250(a)(2)(B), does not run afoul of the Commerce Clause, *United States v. Whaley*, 577 F.3d 254, 258 (5th Cir. 2009), the Due Process Clause, *id.* at 262, or the non-delegation doctrine, *id.* at 264. We have also held that SORNA comports with the requirements of the Ex Post Facto Clause because "the forbidden *act* [viz., failure to register] is not one which was legal at the time [the appellant] committed it." *United States v. Young*, 585 F.3d 199, 203–04 (5th Cir. 2009); *see also Smith v. Doe*, 538 U.S. 84, 92 (2003) (holding Alaska's state sex offender statute did not run afoul of the Ex Post Facto Clause because the law was "a regulatory scheme that is civil and nonpunitive" in intention and in fact). We have rejected challenges to the application of SORNA under the Due Process Clause where the involved states maintained sex offender registries but had not formally implemented SORNA. *United States v. Heth*, 596 F.3d 255, 259 (5th Cir. 2010). We also have held that SORNA does not "compel the States to enact or enforce a federal regulatory program" in violation of the Tenth Amendment. *United States v. Johnson*, 632 F.3d 912, 920 (5th Cir. 2011) (quoting *Printz v. United States*, 521 U.S. 898, 935 (1997)), *petition for cert. filed*, No. 10-10330 (U.S. filed May 3, 2011).[3] Furthermore, no other circuit has held any portion of

---

[3] We have moreover reiterated and reaffirmed each of these holdings in a range of unpublished cases. *See United States v. Byrd*, No. 09-51108, 2011 U.S. App. LEXIS 5962, at *10–12 (5th Cir. Mar. 22, 2011) (following *Heth* and *Whaley*); *United States v. Koch*, 403 F. App'x 917, 917 (5th Cir. 2010) (following *Whaley*); *United States v. Ross*, 385 F. App'x 364, 365 (5th Cir.) (following *Heth* and *Whaley*), *cert. denied*, 131 S. Ct. 583 (2010); *United States v. Marrufo*, 381 F. App'x 403, 404–05 (5th Cir. 2010) (following *Heth* and *Whaley*); *United States v. Contreras*, 380 F. App'x 434, 435–36 (5th Cir. 2010) (following *Heth* and *Whaley*); *United*

SORNA unconstitutional,[4] and the few district courts that have rejected any part of SORNA as unconstitutional have all been reversed or overruled on the merits. *See, e.g.*, *United States v. Waybright*, 561 F. Supp. 2d 1154, 1168 (D. Mont. 2008), *overruled by United States v. George*, 625 F.3d 1124, 1129 n.2 (9th Cir. 2010); *United States v. Powers*, 544 F. Supp. 2d 1331, 1336 (M.D. Fla. 2008), *rev'd*, 562 F.3d 1342, 1344 (11th Cir. 2009) (per curiam); *United States v. Guzman*, 582 F. Supp. 2d 305, 315 (N.D.N.Y. 2008), *rev'd*, 591 F.3d 83, 89–91 (2d Cir. 2010), *cert. denied*, 130 S. Ct. 3487; *United States v. Hall*, 577 F. Supp. 2d 610, 623 (N.D.N.Y. 2008), *rev'd sub nom. United States v. Guzman*, 591 F.3d at 89–91.

Of these various cases upholding SORNA, the Ninth Circuit's decision in *George* is the one that directly addressed the issue presented by this appeal. The Ninth Circuit held that Congress acted within its powers, explaining that "SORNA's registration requirements in [§ 2250(a)(2)(A)] are valid based on the federal government's 'direct supervisory interest' over federal sex offenders." 625 F.3d at 1130 (quoting *Carr*, 130 S. Ct. at 2239).[5] While *George,* of course,

---

*States v. McBroom*, No. 09-50443, 2010 U.S. App. LEXIS 11113, at *3–4 (5th Cir. June 1, 2010) (following *Heth* and *Whaley*), *cert. denied*, 131 S. Ct. 484 (2010); *United States v. Slater*, 373 F. App'x 526, 527 (5th Cir. 2010) (following *Young*); *United States v. Knezek*, No. 09-50438, 2010 U.S. App. LEXIS 8585, at *2–3 (5th Cir. Apr. 26, 2010) (following *Heth* and *Whaley*); *United States v. Letourneau*, 342 F. App'x 24, 26–27 (5th Cir. 2009) (following *Whaley*), *cert. denied*, 130 S. Ct. 1736 (2010); *United States v. Puente*, 348 F. App'x 76, 77 (5th Cir. 2009) (following *Whaley*), *cert. denied*, 130 S. Ct. 1747 (2010).

[4] The Ninth Circuit had held that one portion of the regulations issued by the Attorney General under SORNA posed an Ex Post Facto Clause problem as to the narrow category of federally-adjudicated juvenile delinquents. *See United States v. Juvenile Male*, 590 F.3d 924 (9th Cir. 2009). The Supreme Court, however, recently vacated that decision on mootness grounds without reaching the merits of the Ninth Circuit's ruling. *United States v. Juvenile Male*, No. 09-940, 2011 WL 2518925, at *3 (U.S. June 27, 2011).

[5] The district courts that have considered the question have likewise consistently held that § 2250(a)(2)(A) is constitutional. *See United States v. Morales*, 258 F.R.D. 401, 406 (E.D. Wash. 2009), *appeal docketed*, No. 09-30344 (9th Cir. filed Sept. 23, 2009); *United States v. Thompson*, 595 F. Supp. 2d 143, 145–46 (D. Me. 2009), *aff'd on other grounds*, No. 09-1946, 2011 U.S. App. LEXIS 11408 (1st Cir. June 3, 2011) (unpublished); *United States v. Yelloweagle*, No. 08-cr-364, 2008 U.S. Dist. LEXIS 105479, at *3–5 (D. Colo. Dec. 23, 2008),

does not bind us, "[w]e are always chary to create a circuit split," *Alfaro v. Comm'r*, 349 F. 3d 225, 229 (5th Cir. 2003), absent a "persuasive reason" for doing so, *United States v. Adam*, 296 F.3d 327, 332 (5th Cir. 2002).

Kebodeaux thus faces a high, though not insurmountable, hurdle to reversal: he must overcome the presumption of constitutionality we accord a federal statute and convince us to create a circuit split. In our assessment, Kebodeaux has not cleared this bar.

The arguments that Kebodeaux made in support of his position to the district court and in his initial briefing to our court focused on the Commerce Clause. As discussed above, SORNA makes it a federal offense, through § 2250(a)(2)(B), for a sex offender convicted under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress's power to regulate the channels of, and persons in, interstate commerce.[6] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues only that § 2250(a)(2)(A)

---

*aff'd on other grounds*, No. 09-1247, 2011 U.S. App. LEXIS 8934 (10th Cir. May 2, 2011); *United States v. Santana*, 548 F. Supp. 2d 941, 946–47 (W.D. Tex. 2008), *appeal docketed*, No. 08-51226 (5th Cir. filed Dec. 5, 2008); *United States v. Reeder*, No. EP-08-CR-977, 2008 U.S. Dist. LEXIS 105968 (W.D. Tex. Oct. 31, 2008), *appeal docketed*, No. 08-51212 (5th Cir. filed Nov. 26, 2008); *United States v. Torres*, 573 F. Supp. 2d 925, 935–36 (W.D. Tex. 2008), *appeal docketed*, No. 09-50204 (5th Cir. filed Mar. 16, 2009); *United States v. Senogles*, 570 F. Supp. 2d 1134, 1147 (D. Minn. 2008); *see also United States v. David*, No. 1:08-cr-11, 2008 U.S. Dist. LEXIS 38613, at *26 n.11 (W.D.N.C. May 12, 2008) (suggesting that § 2250(a)(2)(A) is constitutional in dicta), *aff'd*, 333 F. App'x 726 (4th Cir. 2009) (unpublished); *United States v. Voice*, 621 F. Supp. 2d 741, 760 (D.S.D. 2009) (holding that a sex offender convicted under federal law in Indian country and then residing in Indian country could be constitutionally convicted under § 2250(a)(2)(A)), *aff'd*, 622 F.3d 870 (8th Cir. 2010), *cert denied*, 131 S. Ct. 1058 (2011).

[6] *Whaley*, 577 F.3d at 258; *accord George*, 625 F.3d at 1129–30; *Guzman*, 591 F.3d at 90; *United States v. Gould*, 568 F.3d 459, 470-72 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *United States v. Ambert*, 561 F.3d 1202, 1210-11 (11th Cir. 2009); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008).

No. 08-51185

is unconstitutional because it is an invalid attempt by Congress to regulate intrastate activities, rather than interstate commerce.

Kebodeaux's argument ignores the fact that § 2250(a)(2)(A) does not depend on the "interstate commerce" jurisdictional hook. That subsection expressly deals with persons convicted under federal sex offender statutes and is conspicuously lacking the interstate travel element of § 2250(a)(2)(B); this distinction is plainly intentional, *see Carr*, 130 S. Ct. at 2238. Federal sex offender statutes themselves are promulgated under various provisions of Article I. *See, e.g.,* 18 U.S.C. § 2243(a) (criminalizing "sexual abuse of a minor or ward" in United States "special maritime and territorial jurisdiction", pursuant to Congress's Article I power "[t]o define and punish . . . felonies committed on the high seas"). In the present case, Congress had the authority to enact Article 120 of the UCMJ, criminalizing sexual abuse of a minor by a member of the military, pursuant to its power to regulate the military under Article I, Section 8, Clause 14 of the United States Constitution.[7] Kebodeaux does not suggest that Congress lacked the authority to criminalize the conduct of which he was convicted or that the statute under which he was convicted was unconstitutional.

The question then becomes whether Congress's power over federal sex offenses stretches far enough to encompass a registration requirement. The Necessary and Proper Clause of the Constitution gives Congress the power "[t]o make all laws which shall be necessary and proper for carrying into Execution"

---

[7] To the extent that the UCMJ applies to members of the National Guard when engaged in certain functions in federal service, *see* 10 U.S.C. § 802(a)(3), Article 120 likely also derives from Article I, § 8, clause 16, which authorizes laws "for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States." In any event, as applied to Kebodeaux, at the time of his conviction a member of the regular armed forces of the United States, the relevant source of authority is clause 14.

the enumerated powers. U.S. CONST., art. I, § 8, cl. 18. Our analysis of this issue is governed by *United States v. Comstock*, 130 S. Ct. 1949 (2010).

In *Comstock*, the Court held constitutional a civil commitment statute for sexually-dangerous federal prisoners, 18 U.S.C. § 4248, under the Necessary and Proper Clause. *Id.* at 1954. The Court pointed to "five considerations" that supported the conclusion that the statute was constitutional:

> (1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in this arena, (3) the sound reasons for the statute's enactment in light of the Government's custodial interest in safeguarding the public from dangers posed by those in federal custody, (4) the statute's accommodation of state interests, and (5) the statute's narrow scope.

*Id.* at 1965. These five considerations must be part of our assessment here, but we note at the outset that these "considerations" are not factors to be balanced or that may cut for or against the constitutionality of a statute but rather an articulation of every reason supporting the Court's conclusion that the civil commitment at issue in *Comstock* was constitutional. *Comstock* does not require that every one of these considerations be present in every case, nor does *Comstock* in any respect purport to overrule the Court's prior decisional law. Rather, *Comstock* demonstrates the distillation and application of existing law under the Necessary and Proper Clause to a particular statute.

As *Comstock* and the cases on which it relies make clear, two of the considerations—the first and third—are and have long been required in every case decided under the Necessary and Proper Clause: first, that the challenged statute must "constitute[] a means that is rationally related to the implementation of a constitutionally enumerated power," *id.* at 1956 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819), and *Sabri v. United States*, 541 U.S. 600, 605 (1941)); and, second, that the statute must similarly reflect a "'means . . . "reasonably adapted" to the attainment of a legitimate end

under'" an enumerated power, *id.* at 1957 (quoting *Gonzales v. Raich*, 545 U.S. 1, 37 (2005) (Scalia, J., concurring) (quoting *United States v. Darby*, 312 U.S. 100, 121 (1941))); *see also id.* at 1961 ("Moreover, § 4248 is 'reasonably adapted' to Congress' power to act as responsible federal custodian (a power that rests, in turn, on federal criminal statutes that legitimately seek to implement constitutionally enumerated authority." (quoting *Darby*, 312 U.S. at 121)). The remaining three considerations addressed in *Comstock* further inform rather than define the inquiry. *See, e.g., id.* at 1959 ("We recognize that even a longstanding history of related federal action does not demonstrate a statute's constitutionality. A history of involvement, however, can nonetheless be 'helpful in reviewing the substance of a congressional statutory scheme.'" (internal citations omitted) (quoting *Raich*, 545 U.S. at 21)).

We thus address the fundamental inquiry under the Necessary and Proper Clause, that is, the first and third *Comstock* factors: is the challenged statute rationally related to an enumerated power and reasonably adapted to serve that end? On these questions, the Supreme Court's decision in *Carr* offers, as the Ninth Circuit noted in *George*, useful guidance. In explaining why § 2250(a)(2)(B) should be read differently from § 2250(a)(2)(A), the Court held that

> Congress . . . chose to handle federal and state sex offenders differently. There is nothing "anomal[ous]" about such a choice. To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach.

No. 08-51185

> . . .
>
> . . . Congress in § 2250 exposed to federal criminal liability, with penalties of up to 10 years' imprisonment, persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce.

130 S. Ct. at 2238–39; *see also George*, 625 F.3d at 1130 (quoting *Carr*, 130 S. Ct. at 2238, 2239). This quotation from *Carr*[8] thus suggests that § 2250(a) makes SORNA applicable two categories of sex offenders for two distinct reasons: (1) state offenders who move across state lines and thus threaten to undermine the sex offender registration laws that every state has enacted, and (2) federal offenders—not because of any federal concern about their impact on or relationship to the nationwide registration scheme, but rather because of the distinct consideration of "the Federal Government['s] direct supervisory interest" over former federal prisoners. *Id.* at 2239.[9] This logic traces the authority for § 2250, in Kebodeaux's case, through the Necessary and Proper Clause back ultimately to the power to "make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST., art. I, § 8, cl. 14. That is, inasmuch as Congress had the power to enact Article 120 of the UCMJ, Congress also has

> the additional power to imprison people who violate th[at] . . . law[], and the additional power to provide for the safe and reasonable management of those prisons, and the additional power to regulate the prisoners' behavior even after their release. Of course, each of

---

[8] As quoted above, the prior paragraph to this sentence refers to federal prisoners "who typically *would have spent time* under federal criminal supervision." *Id.* at 2238 (emphasis added). *Carr* therefore does not distinguish between the federal government's interest in current and former prisoners; to the contrary, this language suggests that past federal criminal supervision can still be a basis for a sufficient present interest to permit the registration requirement at issue here.

[9] The language in *Carr* concerning § 2250(a)(2)(A) is not strictly part of the binding holding of the Court's opinion, but we are nevertheless hesitant to discard wholesale any portion of a recent Supreme Court decision discussing this very statute.

those powers, like the powers addressed in *Sabri*, *Hall*, and *McCulloch*, is ultimately "derived from" an enumerated power.

*Comstock*, 130 S. Ct. at 1964 (quoting *United States v. Hall*, 98 U.S. 343, (8 Otto) 345 (1879)).

Kebodeaux argues that *Comstock*'s endorsement of Congress's "power to regulate prisoners' behavior even after their release," *id.*, refers only to the power to authorize probation and supervised release as part of a criminal sentence; he then contends that these powers are different in kind from the obligations imposed under SORNA because they are imposed at the time of the criminal judgment. This purported distinction conflates the question of the Article I power to impose an obligation with that of the limitations that the Ex Post Facto Clause, U.S. CONST., art. I, § 9, cl. 3,[10] interposes. To be a permissible exercise of Congress's powers, a law must of course both be authorized under Article I, § 8, and not be prohibited under Article I, § 9, or the various other provisions of and amendments to the Constitution that pose substantive limits on Congress's power. *See Comstock*, 130 S. Ct. at 1956 ("The question presented is whether the Necessary and Proper Clause, Art. I, § 8, cl. 18, grants Congress authority sufficient to enact the statute before us. In resolving that question, we assume, but we do not decide, that other provisions of the Constitution—such as the Due Process Clause—do not prohibit [the law at issue]."). Supervised release must be imposed as part of criminal judgment because it is punitive, but our precedent holds—following the Supreme Court—that the minimal reporting requirements under SORNA are *not* punitive within the meaning of the Ex Post Facto Clause. *Young*, 585 F.3d at 202–06 (citing *Smith*, 538 U.S. at 95). Both,

---

[10] As we noted in *Young*, there are in fact two clauses barring the federal government as well as the states "from enacting any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed . . . .'" 585 F.3d at 202 (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–26 (1867)). Article I, § 9, clause 3, is the clause that restricts the federal government's power.

No. 08-51185

however, are post-release regulations of the behavior of former federal prisoners and derive from the same source of authority as an Article I, § 8 matter. That is, no one contests that Congress may impose some post-release obligations on a federal prisoner; this case simply presents the question of whether the fact that those regulations are, as SORNA's are, non-punitive, civil collateral consequences—and thus not subject to Ex Post Facto Clause limitations—weakens that authority to the point of unconstitutionality. Kebodeaux offers no authority that it does, and we hold that it does not.

This analysis converges with the fifth *Comstock* consideration, the narrow scope of the challenged statute. That is, we need not "fear that our holding today confers on Congress a general 'police power, which the Founders denied the National Government and reposed in the States.'" *Comstock*, 130 S. Ct. at 1964 (quoting *Morrison*, 529 U.S. at 618). SORNA applies only to narrow, specific class of federal offenders who Congress has concluded present a high risk to the public—and imposes only them the non-punitive obligation that they provide basic registration information to state and local governments.[11] The law does not draw within its sweep all persons convicted of federal crimes, and it does not impose significant burdens on those to whom it applies. We need not, that is, even decide the question of whether Congress may permissibly establish non-punitive collateral consequences for all federal crimes—only sex offenses; and we may rely on the Ex Post Facto Clause to provide a separate outer boundary on the kinds of obligations that Congress may require. In short, this limited extension of federal authority is unlikely to devolve into the general police power

---

[11] We recognize that SORNA is not as narrow in the scope of its application as is § 4248, *see Comstock*, 130 S. Ct. at 1964–65 (explaining that the law had only been applied to civilly commit 105 sexually-dangerous persons, and that the law did not extend to persons wholly released from federal custody), but the limited nature of the obligations SORNA imposes—notification and registration—contrasts sharply with the indefinite civil commitment in a Bureau of Prisons mental health facility that § 4248 authorizes so as to counterbalance SORNA's more expansive reach.

that the Supreme Court has repeatedly cautioned does not rest with the federal government.

Turning to the second *Comstock* consideration—the history of federal action in the arena, we agree that federal sex offender registration laws are of relatively recent vintage. *See Carr*, 130 S. Ct. at 2232 (noting that federal sex offender registration laws date to 1994). However, we do not consider that "relatively recent vintage" to be dispositive, and the Court in *Comstock* did not make it so.

The fourth consideration, the extent of the statute's accommodation of state interests, is addressed to some degree by our opinion in *Johnson*. We held there that SORNA as a whole poses no Tenth Amendment problem because the law imposes no actual mandate on the states: "While SORNA orders sex offenders traveling interstate to register and keep their registration current, SORNA does not *require* the States to comply with its directives. Instead, the statute allows jurisdictions to decide whether to implement its provisions or lose ten percent of their federal funding otherwise allocated for criminal justice assistance." 632 F.3d at 920 (citing 42 U.S.C. § 16925(a)). By affording states the option to decline to comply with the law's specific requirements, SORNA provides some accommodation of state interests. Further, the subsection in question addresses the federal interest in a *federal* convict. *See George*, 625 F.3d at 1130.

We therefore read *Comstock* and *Carr* as supporting our holding that Congress had the authority under Article I of the Constitution to devise a narrow, non-punitive collateral regulatory consequence to this particular high-risk category of federal criminal convictions. Kebodeaux has failed to make the "plain," *Morrison*, 529 U.S. at 607, and "persuasive," *Adam*, 296 F.3d at 332, showing we demand before overturning the considered judgment of the

No. 08-51185

legislative and executive branches of the federal government and departing from that of the remainder of the judicial branch.

## CONCLUSION

Accordingly, we conclude that § 2250(a)(2)(A)'s application to intra-state violations of SORNA by sex offenders convicted under federal law is constitutional.  The judgment of the district court is AFFIRMED.

No. 08-51185

DENNIS, Circuit Judge, concurring in the judgment and assigning reasons:

Defendant Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intra-state change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A) because that provision regulates purely intra-state activities, rather than any aspect of Congress's proper domain of interstate commerce. I conclude, however, that § 2250(a)(2)(A) is constitutional because it is not a stand-alone statute, but is part of SORNA and necessary to make SORNA effective in regulating the channels of, and persons in, interstate commerce.

Under § 2250(a)(2)(B), SORNA makes it a federal offense for a sex offender convicted under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress's power to regulate the channels of, and persons in, interstate commerce.[1] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues only that § 2250(a)(2)(A), in isolation, is unconstitutional because it is an invalid attempt by Congress to regulate intra-state activities, rather than interstate commerce.

Kebodeaux's challenge is without merit because § 2250(a)(2)(A) is an integral part of SORNA, rather than a stand-alone provision, and, as such, it is a constitutional regulation of intra-state activities that is necessary and proper

---

[1] *United States v. Whaley*, 577 F.3d 254, 258 (5th Cir. 2009); *accord United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010); *United States v. Gould*, 568 F.3d 459, 470-72 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1210-11 (11th Cir. 2009); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008).

to make SORNA, particularly § 2250(a)(2)(B), effective as a regulation of interstate commerce. As structured, SORNA is designed to "address the deficiencies in prior law that had enabled sex offenders to slip through the cracks" by moving interstate.[2] It recognizes that "'every state ha[s] enacted some' type of [sex offender] registration system"[3] and that "Congress . . . conditioned certain federal funds on States' adoption of 'criminal penalties' on any person 'required to register under a State program . . . who knowingly fails to so register and keep such registration current.'"[4] In this manner, SORNA gave "the States primary responsibility for supervising and ensuring compliance among state sex offenders."[5] Through § 2250(a)(2)(B), however, it "exposed to federal criminal liability . . . persons required to register under SORNA . . . who threaten the efficacy of the statutory scheme by traveling in interstate commerce."[6] Moreover, Congress did not delegate to the states the additional responsibility of prosecuting sex offenders convicted under federal law who fail to update their registrations after in-state residence changes. Rather, SORNA makes such an intra-state re-registration failure a federal offense amenable to prosecution by the federal government. Accordingly, § 2250(a)(2)(A) helps to make SORNA's regulation of interstate commerce effective by obviating potential sources of interference or disruption of that objective. For example, had Congress not criminalized federal sex offenders' undocumented, intra-state residence changes,

---

[2] *Carr v. United States*, 130 S. Ct. 2229, 2240 (2010) (also quoting 42 U.S.C. § 16901 as stating, "'Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders'" (alteration in original)).

[3] *Id.* at 2239 n.7 (alteration omitted) (quoting *Smith v. Doe*, 538 U.S. 84, 90 (2003)).

[4] *Id.* at 2238-39 (second alteration in original) (quoting Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. 103-322, tit. XVII, § 170101(c), 108 Stat. 2041 (1994) (codified at 42 U.S.C. § 14071(d))).

[5] *Id.* at 2238.

[6] *Id.* at 2239.

there would no deterrence to their moving intra-state without re-registering. This would have caused disparate and delayed enforcement of SORNA against federal sex offenders, allowing them to establish residences in some states as apparent law abiders, which would have made them difficult to monitor either in-state or in interstate commerce.

## I.

On April 2, 2008, a federal grand jury indicted Kebodeaux on one count of violating SORNA, 18 U.S.C. § 2250(a).[7] Section 2250(a) provides for up to ten years' imprisonment for:

> Whoever—
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act.

Thus, "Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration [and updating] requirements: any person

---

[7] 42 U.S.C. § 16913(a) requires, "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence." 42 U.S.C. § 16913(c) also provides, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register."

No. 08-51185

who is a sex offender 'by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States,' § 2250(a)(2)(A), and any other person required to register under SORNA who 'travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,' § 2250(a)(2)(B)." *Carr v. United States*, 130 S. Ct. 2229, 2238 (2010) (alteration omitted). Accordingly, "[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability." *Id.* at 2235 n.3 (citing § 2250(a)(2)(A)).

Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)'s punishment of a federal sex offender for knowingly failing to update his registration after an intra-state relocation. He concedes the constitutional validity of the balance of SORNA's provisions.

## II.

Yet, as the Supreme Court recently explained in *Carr v. United States*—holding that "[l]iability under § 2250[(a)(2)(B)] . . . cannot be predicated on pre-SORNA travel," 130 S. Ct. at 2233—"Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in [the] broader statutory scheme" of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, which was "enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks" of state-based sex offender registration systems. *Carr*, 130 S. Ct. at 2240 (also quoting 42 U.S.C. § 16901 for the proposition that "'Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders'" (alteration in original)); *see also, e.g.*, *United States v. Whaley*, 577 F.3d 254, 259 (5th Cir. 2009) ("SORNA[] focus[es] on the problem of sex offenders escaping their registration requirements through interstate travel . . . ."); *United States v. Ambert*, 561 F.3d 1202, 1212 (11th Cir. 2009) (Congress enacted SORNA "to create an interstate system to counteract the danger posed by sex

offenders who slip through the cracks or exploit a weak state registration system by traveling or moving to another state without registering therein.'" (citing 42 U.S.C. § 16901)).

Accordingly, in *Carr*, the Supreme Court described how SORNA's various sections work together to further the joint state-federal goals of comprehensive identification and registration of all state and federal sex offenders and punishing those who knowingly avoid updating their registrations:

> Among its many provisions, SORNA instructs States to maintain sex-offender registries that compile an array of information about sex offenders, [42 U.S.C.] § 16914; to make this information publicly available online, § 16918; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry, §§ 16919-16921; and to "provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter," § 16913(e). Sex offenders, in turn, are required to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," § 16913(a), and to appear in person periodically to "allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered," § 16916.

*Carr*, 130 S. Ct. at 2240-41. The Court continued, "By facilitating the collection of sex-offender information and its dissemination among jurisdictions, these provisions, not § 2250, stand at the center of Congress' effort to account for missing sex offenders." *Id.* at 2241. Therefore, 28 U.S.C. § 2250(a)(2)(A), a subsection of that same statute, clearly was not enacted as a stand-alone provision, but rather as a complement to the Act's other provisions. *Cf. Whaley*, 577 F.3d at 259 (stating that § 2250 is "complementary" to SORNA's registration requirements in § 16913 (citing *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008))).

## III.

No. 08-51185

The Necessary and Proper Clause of the Constitution gives Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution" the enumerated powers. U.S. Const. art. 1, § 8, cl. 18. Specifically, in respect to effectuating the Commerce Clause power, the Supreme Court has explained that the Necessary and Proper Clause provides Congress the authority to enact "comprehensive legislation to regulate the interstate market" even when that "regulation ensnares some purely intrastate activity." *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). In *Raich,* the Court held that under the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., through the Necessary and Proper Clause power to effectuate the Commerce Clause authority, Congress could regulate the intra-state production of marijuana as "Congress could have rationally concluded that the aggregate impact on the national market of all the" regulated intra-state activities "is unquestionably substantial." 545 U.S. at 32.

In *Raich*, Justice Scalia concurred in the judgment and wrote separately to explain that, although he "agree[d] with the Court's holding that the [CSA] may validly be applied to respondents' [intra-state] cultivation, distribution, and possession of marijuana for personal, medicinal use," his "understanding of the doctrinal foundation on which that holding rests is, if not inconsistent with that of the Court, at least more nuanced." *Id.* at 33 (Scalia, J., concurring in the judgment). He explained that the combination of the Necessary and Proper Clause power and the Commerce Clause authority means that "Congress's authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws directed against economic activities that have a substantial effect on interstate commerce. . . . [Congress can] regulate[] [non-economic activities] as 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'" *Id.* at 36 (quoting *United States v. Lopez*, 514 U.S. 549, 561 (1995)). "The relevant question is simply whether the means chosen are

21

No. 08-51185

'*reasonably adapted*' to the attainment of a legitimate end under the commerce power." *Id.* at 37 (emphasis added) (quoting *United States v. Darby*, 312 U.S. 100, 121 (1941)).

Justice Scalia based his interpretation on a long line of Supreme Court precedents. *Id.* at 34 (citing *Katzenbach v. McClung*, 379 U.S. 294, 301-02, (1964); *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 119 (1942); *Shreveport Rate Cases*, 234 U.S. 342, 353 (1914); *United States v. E.C. Knight Co.*, 156 U.S. 1, 39-40 (1895) (Harlan, J., dissenting); *United States v. Coombs*, 37 U.S. (12 Pet.) 72, 78 (1838)). Moreover, he explained, "[W]e implicitly acknowledged in *Lopez* . . . [that] Congress's authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws directed against economic activities that have a substantial effect on interstate commerce. Though the conduct in *Lopez* was not economic, the Court nevertheless recognized that it could be regulated as 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'" *Id.* at 36 (quoting *Lopez*, 514 U.S. at 561). "This statement referred to those cases permitting the regulation of intrastate activities 'which in a substantial way interfere with or obstruct the exercise of the granted power.'" *Id.* (quoting *Wrightwood Dairy Co.*, 315 U.S. at 119) (citing *Darby*, 312 U.S. at 118-19; *Shreveport Rate Cases*, 234 U.S. at 353). "As the Court put it in *Wrightwood Dairy*, where Congress has the authority to enact a regulation of interstate commerce, 'it possesses every power needed to make that regulation effective.'" *Id.* (quoting *Wrightwood Dairy,* 315 U.S. at 118-19). "Although this power 'to make . . . regulation effective' commonly overlaps with the authority to regulate economic activities that substantially affect interstate commerce, and may in some cases have been confused with that authority, the two are distinct. The regulation of an intrastate activity may be essential to a comprehensive regulation of interstate commerce even though the

22

intrastate activity does not itself 'substantially affect' interstate commerce. Moreover, as the passage from *Lopez* quoted above suggests, Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Id.* at 37 (alteration in original) (footnote omitted) (citing *Lopez*, 514 U.S. at 561). "The relevant question is simply whether the means chosen are '*reasonably adapted*' to the attainment of a legitimate end under the commerce power." *Id.* (emphasis added) (quoting *Darby*, 312 U.S. at 121).

In *United States v. Comstock*, 130 S. Ct. 1949 (2010), the majority of the Supreme Court confirmed Justice Scalia's view that the Necessary and Proper Clause empowers Congress to enact legislation that is "reasonably adapted" to effectuating an enumerated power. Specifically, in *Comstock*, the Supreme Court upheld a federal civil-commitment statute that "authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released. 18 U.S.C. § 4248." 130 S. Ct. at 1954. The Court concluded that Congress had such power based upon the Necessary and Proper Clause's authorization to implement the Commerce Clause and other enumerated powers. *Id.* It explained that to determine whether a statute was a constitutional exercise of the Necessary and Proper Clause power, "we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power." *Id.* at 1956 (emphasis added); *see also id.* at 1962 (stating that the statute is constitutional under the Clause if it "represent[s] a rational means for implementing a constitutional grant of legislative authority"). The civil-commitment statute was constitutional, therefore, as it was "'*reasonably adapted*' to Congress' power to act as a responsible federal custodian[, ]a power that rests, in turn, upon federal criminal statutes that legitimately seek to implement constitutionally enumerated authority," including the Commerce

Clause power. *Id.* at 1961 (emphasis added) (citation omitted) (quoting *Darby*, 312 U.S. at 121); *see id.* at 1964 (stating that criminal statutes "often, but not exclusively" rely on the "Commerce Clause power").

The *Comstock* majority described five factors it considered in holding that the civil-commitment statute was constitutional: "(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in [legislating in relation to 'prison-related mental health statutes,' like the one at issue in *Comstock*, *id.* at 1958], (3) the sound reasons for the statute's enactment . . . , (4) the statute's accommodation of state interests, and (5) the statute's narrow scope." *Id.* at 1965. However, the majority opinion demonstrates that these factors are merely ways of rephrasing or implementing the notion that Congress may pass laws rationally related or reasonably adapted to the effectuation of enumerated powers. For example, in discussing the first factor, the Court wrote: "We have . . . made clear that, in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.* at 1956. Regarding the second factor, the Court explained that the history of federal involvement in an area could not on its own "demonstrate a statute's constitutionality"; instead, the Court stated that it was a means of analyzing "the reasonableness of the relation between the new statute and pre-existing federal interests." *Id.* at 1958. Similarly, in expounding the third factor, the Court stated that a court should find the reasons for a statute sound if they "satisf[y] the Constitution's insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority." *Id.* at 1962.

Other jurists and commentators have also read the *Comstock* majority as holding that a statute that is "rationally related" or "reasonably adapted" to an

enumerated power is a constitutional expression of the Necessary and Proper Clause power. *See id.* at 1966 (Kennedy, J., concurring in the judgment) ("The Court concludes that, when determining whether Congress has the authority to enact a specific law under the Necessary and Proper Clause, we look 'to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.'" (quoting *id.* at 1956 (majority opinion))); *United States v. Yelloweagle*, — F.3d —, 2011 WL 1632095, at *9 (10th Cir. May 2, 2011) (stating that a statute was constitutional under the Necessary and Proper Clause because it "represent[ed] a rational means for implementing a constitutional grant of legislative authority" (quoting *Comstock*, 130 S. Ct. at 1962) (internal quotation marks omitted)); *United States v. Pendleton*, 636 F.3d 78, 87 (3d Cir. 2011) (stating that in light of *Comstock*, to determine whether a statute is constitutional under the Necessary and Proper Clause, "the relevant inquiry is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or under other powers that the Constitution grants Congress the authority to implement" (quoting *Comstock*, 130 S. Ct. at 1957) (internal quotation marks omitted)); *United States v. Belfast*, 611 F.3d 783, 804 (11th Cir. 2010) (stating that *Comstock* holds that to determine whether "the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power" (quoting *Comstock*, 130 S. Ct. at 1956) (internal quotation marks omitted)); *Al-Bihani v. Obama*, 619 F.3d 1, 25 n.11 (D.C. Cir. 2010) (Kavanaugh, J., concurring in the denial of rehearing en banc) (suggesting the same reading of *Comstock*); *Mead v. Holder*, — F. Supp. 2d —, 2011 WL 611139, at *16 (D.D.C. Feb. 22, 2011) ("Courts look to see whether the challenged statute constitutes a means that is 'rationally related to the implementation of a constitutionally enumerated power'

when determining whether it falls within Congress's power under the Necessary and Proper Clause." (quoting *Comstock*, 130 S. Ct. at 1956)); *Virginia ex rel. Cuccinelli v. Sebelius*, 702 F. Supp. 2d 598, 611 (E.D. Va. 2010) ("[T]he relevant inquiry is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or under other powers that the Constitution grants Congress the authority to implement." (alteration in original) (quoting *Comstock*, 130 S. Ct. at 1957) (internal quotation marks omitted));[8] 16A Am. Jur. 2d *Constitutional Law* § 343 (2011) ("In determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, the court looks to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." (citing *Comstock*, 130 S. Ct. 1949)); Robert R. Harrison, *Health Care Reform in the Federal Courts*, 57 Fed. Law., Sept. 2010, at 52, 56 ("In *Comstock*, the Court noted that the scope of the Necessary and Proper Clause is limited by the inquiry 'whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or other powers that the Constitution grants Congress the authority to implement.'" (quoting *Comstock*, 130 S. Ct. at 1956-57)).[9]

---

[8] *See also Gill v. Office of Pers. Mgmt.*, 699 F. Supp. 2d 374, 393 (D. Mass. 2010) (stating that the second *Comstock* factor, history, is only a proxy to determine "the reasonableness of the relation between the new statute and pre-existing federal interests" (quoting *Comstock*, 130 S. Ct. at 1952) (internal quotation marks omitted)); *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 698 F. Supp. 2d 234, 250 (D. Mass. 2010) (same).

[9] *See also* 16 Am. Jur. 2d *Constitutional Law* § 107 (2011) (stating that the second *Comstock* factor, history, is a proxy for determining "the reasonableness of the relation between the new statute and pre-existing federal interests"); Michael C. Dorf, *The Supreme Court's Decision About Sexually Dangerous Federal Prisoners: Could It Hold the Key to the Constitutionality of the Individual Mandate to Buy Health Insurance?*, Findlaw.com (May 19, 2010), http://writ.news.findlaw.com/dorf/20100519.html ("[T]he seven Justices in the [*Comstock*] majority [] were fully comfortable with federal power extending to areas that are not independently regulable, so long as regulation in those areas is reasonably related to regulation that is within the scope of congressional power.").

No. 08-51185

## IV.

Accordingly, I conclude that § 2250(a)(2)(A)'s application to intra-state violations of SORNA by sex offenders convicted under federal law is necessary and proper to—that is, rationally related and reasonably adapted to—SORNA's statutory scheme, which is designed to regulate the interstate movement of sex offenders, using Congress's Commerce Clause power. *See Carr*, 130 S. Ct. at 2240 (citing 42 U.S.C. § 16901). In particular, I conclude that § 2250(a)(2)(A) is a constitutional exercise of Congress's Necessary and Proper Clause power because it is rationally related and reasonably adapted to § 2250(a)'s other subsection, § 2250(a)(2)(B), which we have already upheld as a proper exercise of the Commerce Clause power. *Whaley*, 577 F.3d at 258. For these reasons, I agree that the judgment of the district court must be affirmed.

Although I agree with the majority in affirming the judgment of the district court, I cannot join the majority opinion because it departs from the doctrinal framework established by the Supreme Court for analyzing Commerce Clause legislation, such as SORNA and its provisions that are at issue in the present case. Contrary to the clear teachings of the Supreme Court in *Carr* and this court in *Whaley*, the majority interprets § 2250(a)(2)(A) as a stand-alone statute that is rationally related only to a pre-existing military penal statute, rather than as a necessary and integral part of the Commerce-Clause-based SORNA. Majority Op. 11 (stating that § 2250(a)(2)(A) does not reflect "any federal concern about [federal sex offenders'] impact on or relationship to the nationwide registration scheme" that SORNA was designed to create). By trying to justify SORNA's § 2250(a)(2)(A) as rationally related to the military law under which Kebodeaux was convicted and imprisoned, rather than reasonably adapted to SORNA's regulation of interstate commerce, which §2250(a)(2)(A) was enacted with and made an integral part of, the majority relies upon an altogether different legislative power that is, at best, only tangentially related

27

to SORNA's registration requirement. Consequently, I believe that the majority has fallen into serious error in reading *Comstock* to arrogate vast revisionary powers to judges, allowing them to uphold as necessary and proper any piece of legislation, regardless of the vehicle by which Congress enacted it, so long as the judges can in retrospect see a rational relationship between that law and some enumerated power.

Contrary to the majority's assertion, *United States v. George*, 625 F.3d 1124 (9th Cir. 2010), provides no support for its reasoning. *See* Majority Op. 6-7, 14. *George* addressed the constitutionality of § 2250(a)(2)(A) in response to the defendant's claim that the provision fell "outside of Congress's commerce clause powers." 625 F.3d at 1129. The panel then stated that "Congress had the power under its broad commerce clause authority to enact the SORNA." *George*, 625 F.3d at 1130.[10] It explained that the Commerce Clause power includes the authority "to make all laws that are 'necessary and proper' for the accomplishment of [Congress's] commerce clause power," *id.* at 1129 (quoting U.S. Const. art. I, § 8, cl. 18), which in turn includes regulating "intrastate activity that has a substantial effect on interstate commerce," *id.* (citing *Wickard v. Filburn*, 317 U.S. 111, 125 (1942)).

The *George* panel further quoted *Carr*, 130 S.Ct. at 2238, for the proposition that "it is entirely reasonable for Congress to have assigned to the federal government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision." *Id.* at 1130. Immediately after this, the *George* panel also stated: "*Compare United States v. Comstock*, 130 S. Ct. 1949 (2010) (upholding under the Necessary and Proper Clause a statute

---

[10] In support of this proposition, the *George* panel cited *Whaley*, 577 F.3d at 258; *Gould*, 568 F.3d at 470-72; *Ambert*, 561 F.3d at 1210; *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008); and *May*, 535 F.3d at 921. *George*, 625 F.3d at 1130.

that provided for the civil commitment of sexually dangerous federal prisoners beyond the date they would otherwise be released)." *Id.* Thus, rather than holding that § 2250(a)(2)(A) is constitutional because it is rationally related and reasonably adapted to a "federal interest in a *federal* convict"—as the majority reads the opinion, Majority Op. 14 (citing *George*, 625 F.3d at 1130)—*George* performed the analysis I suggest above, acknowledging that § 2250(a)(2)(A) is part of the broader SORNA statutory scheme, whose aim is to regulate sex offenders' interstate movement, and upholding § 2250(a)(2)(A) as a necessary and proper extension of that scheme. In doing so, it relied on the reasoning of *Comstock*, in which a majority of the Justices approved Justice Scalia's Commerce Clause analysis in *Raich. See also United States v. Ross*, — F. Supp. 2d —, 2011 WL 1481394, at *13 (D.D.C. Apr. 19, 2011) (citing *George*, 625 F.3d at 1130, in support of the statement that "[t]he Court agrees with 'every circuit that has examined the issue in concluding that § 2250 is a legitimate exercise of congressional Commerce Clause authority.'" (alteration omitted) (quoting *United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010)); *United States v. Cotton*, 760 F. Supp. 2d 116, 139-40 (D.D.C. 2011) (same).

What is more, the Tenth Circuit has now upheld § 2250(a)(2)(A) as constitutional on the same ground that I urged in my previous concurring opinion. *United States v. Yelloweagle*, — F.3d —, 2011 WL 1632095 (10th Cir. May 2, 2011). In that case, Yelloweagle "was previously convicted of a federal sex offense," "failed to register as required [by SORNA], [and] was indicted by federal authorities under the [SORNA] enforcement provision," § 2250(a)(2)(A). *Yelloweagle*, 2011 WL 1632095, at *1. On appeal, "Yelloweagle contended that [§ 2250(a)(2)(A)] lacked a jurisdictional basis and therefore was unconstitutional." *Id.* Citing and quoting that *Kebodeaux* concurring opinion, the Tenth Circuit concluded that § 2250(a)(2)(A) was constitutional because it was necessary and proper to facilitate SORNA's constitutional regulation of sex

offenders' interstate movement, which was authorized by Congress's power under the Commerce Clause. *Id.* at *12 (also quoting *United States v. Kebodeaux*, 634 F.3d 293, 301 (5th Cir. 2011) (Dennis, J. concurring in the judgment), for the proposition "that § 2250(a)(2)(A) is 'a necessary and integral part of the commerce-clause-based SORNA'").

The Tenth Circuit in *Yelloweagle* reached this conclusion by first surveying "The Sex Offender Registration and Enforcement Regime." *Id.* at *1. As a result, it recognized that SORNA was enacted as a comprehensive statutory scheme "to keep track of sex offenders" who move interstate. *Id.* at *2 (quoting *George*, 625 F.3d at 1129) (internal quotation marks omitted).[11] Accordingly, the *Yelloweagle* court concluded that while the defendant focused his challenge narrowly on one of SORNA's provisions, § 2250(a)(2)(A), it was not proper for the panel to analyze the provision as if it were a stand-alone statute. *Id.* at *12. Instead, the court held that § 2250(a)(2)(A) was constitutional as part of SORNA's statutory scheme. *Id.* Therefore, the court explained that it was key that Yelloweagle had "waived his challenge to § 16913," allowing the panel to presume that § 16913 was a valid exercise of the Commerce Clause power. *Id.* at *9, *11.[12]

The Tenth Circuit panel then concluded that "the Necessary and Proper Clause Gives Congress the Authority to Enact § 2250(a)(2)(A)." *Id.* at *10. "As the Supreme Court recently stated: '[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular

---

[11] Further supporting my view that *George* upheld § 2250(a)(2)(A) as necessary and proper to effectuate the exercise of Congress's Commerce Clause power, the Tenth Circuit not only relied on *George* for its holding, but also never suggested that *George* could be read as supporting any other analysis, nor that the Tenth Circuit's reasoning had split it from the Ninth Circuit.

[12] *Yelloweagle*'s assumption that § 16913 is constitutional under the Commerce Clause is consistent with the affirmative holding of this court in *Whaley* that § 16913 is a constitutional exercise of the necessary and proper power to effectuate the Commerce Clause power, and that § 2250(a)(2)(B) is a constitutional exercise of the Commerce Clause power. *Whaley*, 577 F.3d at 258-61.

federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.'" *Id.* at *9 (alteration in original) (quoting *Comstock*, 130 S. Ct. at 1956). "[W]e have before the court an undisputedly valid exercise of Congress's Commerce Clause power—*viz.*, the sex offender registration scheme of § 16913." *Id.* at *12. Therefore, "[i]t seems beyond peradventure that the criminal enforcement provision of § 2250(a)(2)(A) is 'rationally related or reasonably adapted to the effectuation' of the sex offender registration regime of § 16913." *Id.* (quoting *Kebodeaux*, 634 F.3d at 297 (majority opinion) (in turn citing *Comstock*, 130 S. Ct. at 1956)). "Section 2250(a)(2)(A) 'clearly was not enacted as a stand-alone provision, but rather as a complement to [SORNA's] other provisions.'" *Id.* (alteration in original) (quoting *Kebodeaux*, 634 F.3d at 301 (Dennis, J., concurring in the judgment)). "[I]n a concurring opinion in *Kebodeaux*, Judge Dennis highlighted the relationship between § 2250(a)(2)(A) and the registration regime of § 16913 . . . . 'Section 2250(a)(2)(A) helps to make SORNA's regulation of interstate commerce effective by obviating potential sources of interference or disruption of that objective. For example, had Congress not criminalized federal sex offenders' undocumented, intra-state residence changes, there would [be] no deterrence to their moving intra-state without reregistering. This would have caused disparate and delayed enforcement of SORNA against federal sex offenders, allowing them to establish residences in some states as apparent law abiders, which would have made them difficult to monitor either in-state or in interstate commerce.'" *Id.* at *12-13 (third alteration in original) (quoting *Kebodeaux*, 634 F.3d at 299 (Dennis, J., concurring in the judgment)). Therefore, the Tenth Circuit panel stated, "we conclude that Congress has the authority under the Necessary and Proper Clause to enact § 2250(a)(2)(A) in order to criminally enforce its validly enacted registration provision, § 16913." *Id.* at *13.

31

No. 08-51185

\* \* \*

Consistent with the Supreme Court and Circuit authority cited above, and unlike the majority, I would not treat § 2250(a)(2)(A) as a stand-alone statute. Instead, I believe we must analyze whether it is constitutional as part of SORNA's statutory scheme. Because (1) the Supreme Court and circuit courts have consistently explained that SORNA's statutory scheme is intended to regulate the interstate movement of sex offenders, and thus was passed pursuant to Congress's Commerce Clause power; (2) *Comstock* teaches that a majority of the Supreme Court has now approved and adopted Justice Scalia's Commerce Clause analysis in *Raich*; and (3) § 2250(a)(2)(A) clearly facilitates SORNA's regulation of sex offenders' interstate movement, because it is rationally related and reasonably adapted to preventing sex offenders from "slipping through the cracks" of state-based registration schemes, I would uphold § 2250(a)(2)(A) as a necessary and proper extension of Congress's Commerce Clause power to enact SORNA's other provisions, particularly § 2250(a)(2)(B). Doing so would be consistent with every other circuit that has considered the issue.

For these reasons, I concur only in the judgment upholding the constitutionality of § 2250(a)(2)(A) and affirming Kebodeaux's conviction and sentence.